## STATE ex. KINZIG v INDUSTRIAL COMMISSION

Ohio Appeals, 2nd Dist, Franklin Co

No 2808. Decided March 31, 1938

Ralph J. Hanaghan of Scharrer, Scharrer, McCarty & Hanaghan, Dayton, for relator.

Herbert S. Duffy, Attorney General, Columbus.

Eugene S. Carlin, Asst. Atty. Gen'l., Columbus, for respondent.

## OPINION

By HORNBECK, J.

Relator, on the 17th day of January, 1935, and for many years prior thereto had been employed by the Burkhardt Packing Company of Dayton, Ohio, and on that date suffered an injury while in the course of his employment resulting in temporary disability. A claim was filed with respondent Commission which found that relator had been injured at the time and in the manner therein set forth resulting in his temporary total disability, and paid for medical services incurred by reason thereof. Upor the report filed by relator's employed the Commission found that the relator had been paid his full wage of $38.25 per week from the date of his injury until April 13, 1935, and during that period awarded him no compensation, and further found that from April 14, 1935, to the date when he returned to work on July 21, 1935, his employer had reduced his wage to $15.00 per week, which sum it paid to him and for that period the Commission awarded relator the sum of 2-3 of the difference between his actual wage of $38.25 and the sum which his employer was paying him weekly, namely, $15.00, which award was in the amount of $15.50 per week.

It is the claim of relator that he is entitled by virtue of §1465-68 and 1465-79, GC., to an award of the full two-thirds of his weekly wage from the date of his injury, January 17, 1935, to July 21, 1935 when he returned to work, allowing as a credit thereon the amount which was paid to him by the respondent from April 14, 1935, to July 21, 1935. The action is for a writ commanding the respondent to pay to the relator the amount which he claims as heretofore set forth.

The facts appearing upon the question presented are that during the period from January 17, 1935, to April 13, 1935, the employer paid to the relator an amount equal to his full weekly wage at the time of his injury, and thereafter during his disability paid him the full amount of his weekly wage less that which was paid to another employee who was required to be hired in relator's place. The respondent takes the view that during the period when he received an amount equal to his full wage he suffered no loss and that for the remaining period the loss which he suffered was the difference between that which he was paid and the amount of his weekly wage when he was injured. It is the claim of the relator that the Workmen's Compensation fund is available to employees who have been injured or their beneficiaries if the injured person suffers death, and that in the interpretation of the act the most liberal construction should be given favorably to the employees. Supporting this position we are cited to the well known cases of Roma v Industrial Commission, 97 Oh St., 247; Industrial Commission v Weigant, 102 Oh St., 1; Baker v Industrial Commission, 44 Oh Ap., 539, (14 Abs 315) and others.

It is further claimed that the benefits to which injured employees are entitled are comparable to the benefits to which an insured is entitled when covered by accident insurance and has suffered an accident included within the terms of the policy. To this effect, Brunk, Admx., v C.C.C. & St. L. Ry. Co., 20 O.N.P. N.S., 360, is cited, where it is held:

"The court is convinced that the compensation provided by the Workmen's Compensation Act is in the nature of occupational insurance and that the same rule which is applicable to general insurance is applicable to the payment of compensation under the act; the act being silent on this point."

The germane sections are 1465-68, GC which insofar as pertinent provides:

"Every employee mentioned in §1465-61, who is injured, * * * shall be paid such compensation out of the state insurance fund for loss sustained on account of such injury * * * as is provided in the case of other injured * * * employees."

Sec 1465-79, GC.

"In case of temporary disability, the employee shall receive 66 2-3 per cent. of his average weekly wages so long as such disability is total, not to exceed a maximum of $18.75 per week. * * * "

Our attention is directed to the fact that 1465-79 is mandatory in terms and provides that in case of temporary disability the employee shall receive, etc. It is our judgment that §1465-68 and 1465-79

must be read together and that payment by virtue of §1465-79 which fixes the amount thereof is only to be made to those who come within the terms of §1465-68.

We grant that in many particulars the liability of the respondent to pay to an injured employee who receives his injury in the course of his employment is the same under §1465-68 as in the liability of the insurer to an insured who suffers an injury covered by the terms of his policy.

The extent of liability in the former is fixed by the terms of the act, in the latter by the terms of the policy, which is a contract between the engaging parties and under which the insured pays a premium to the insurer. Under the Workmen's Compensation Act the employee pays no money toward the creation of the fund from which the benefits are paid. The employers who participate in the Workmen's Compensation Act provide the fund which is to be expended according to the express language of the Act. The amount which the employers pay into the fund annually is lessened in the proportion that the number of accidental injuries occurring among their employees, upon which the Commission is required to make payments, is decreased. This is but a discussion of the insurance phase of the case and in no sense controlling of our conclusion, which is grounded upon the express language of §1465-68, GC.

In this case, when the employer made report to the Commission it gave the information that it had paid the relator his full wages as such for a certain period and part of his wages for the remainder of the period of his injury. This designation of the payment was also carried into the books of the employer. It is true that the manager of the employing company said that this payment was virtually a gift and that no services were rendered for it. Obviously, this conclusion could be drawn but the company carried the payment as though the employee was continuing in the employ of his employer and to the extent that he was thus paid he suffered no monetary loss by reason of his injury. It is our judgment that §1465-68 does not contemplate that payment will be made out of the compensation fund to an injured employee who has suffered disability if his employer continues to keep him on the payroll as though he were actually on the job rendering services. In this situation he does not sustain a loss as to such payment which is contemplated by the section. Had the employer chosen to make a gift to relator, a worthy and deserving employee, this case no doubt would not be before us.

Without changing the facts in this case in the slightest degree, let us suppose that relator's employer had been a selfinsurer and had opposed an order for payment of any sum to relator during the period that he was paid the full amount of his weekly wage. Would not the objection have been well made. The employer could have urged that relator had received full wage and that he had lost nothing by reason of the fact that he had been incapacitated for work; that the company was willing to pay him the same sum he had been receiving when he was able to work, although during his disability he could not report for duty or perform any manual labor.

We have read many cases from other states with the hope that we might find some in point. Because of the difference in the text of the Workmen's Compensation Acts in many of the states other than Ohio, cases from them are not especially helpful. However, there is one that by analogy is of some benefit on the question presented here, namely, Tulsa Rolling Mills Co v Krejci, et al., (Okla.) 299 Pac. 225, the syllabus of which holds:

"Wages received by salaried employee during period of temporary total disability resulting from accident held deductible from compensation award for such disability."

The applicant was on a monthly salary of $250.00 and was injured in the course of his employment on March 5, 1930. He recovered from his injury on September 24, 1930. The amount which would probably have been awarded to the applicant for the period of his temporary total disability was $468.00 and it appeared that he had not worked any after his injury, although he was paid his regular salary for the whole period of his disability. He filed his application for compensation after his recovery.

We restrict our opinion in this case to the facts and do not undertake to say that no situation could arise wherein an employer could not advance money to an employee over and beyond the benefits to which he was entitled and which he received from the Workmen's Compensation Fund. But in this case the employer to all intents and purposes treated the employee as though he were yet on the job earning his weekly wage, though, of course,

he was incapacitated from earning any stipend which could properly be classified as personal earnings or wages.

We do not find that the facts in this case under the law as we interpret it, clearly require that the writ of mandamus issue. It will therefore be denied.

BARNES, PJ., concurring.

### DISSENTING OPINION

By GEIGER, J.

I find myself unable to agree with my associates. I believe that an examination of the Workmen's Compensation Law will disclose their erroneous position. We turn first to the Constitution, **Sec 35, Art. 2.** It provides in substance that for the purpose of providing compensation for injuries occasioned in the course of employment, a State fund may be created by compulsory compensation administered by the State, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu of all other rights to compensation and every employer who pays the premium shall not be liable to respond in damages for the injuries suffered by his employee. Laws may be passed establishing a Board empowered to classify all occupations according to their degree of **hazard,** to fix rates of contribution to such fund according to such classification.

I think that it clearly appears that while the employer provides the fund necessary to compensate the injured laborer, yet the laborer has as a matter of fact made a contribution to the fund in that no matter how negligent the employer may have been in causing the injury the employee has no option but to accept the sum prescribed by the law in compensation for the loss which may greatly exceed the sum paid under the statute.

Sec 1465-69 GC provides that every employer will pay into the State Insurance Fund the amount of premiums determined and fixed by the Commission, such amount to be determined by the classification, rules and rates made by such Commission and thereafter pay such further sum of money into the Insurance Fund as may be ascertained to be due. This provision is referred to only to question the assertion of the majority that the employer by continuing to pay wages after his employee has been injured thereby places himself in a more favorable position in reference to future payments to be made by him to the fund. We only need to consider that this payment is to be made according to classifications.

According to the Constitution, the law shall be passed to classify all occupations according to their degree of hazard and fix the rates of contribution to such fund according to the classification. It is true that the "hazard" may be determined by the amount drawn from the fund to pay employees falling within any given classification, but the reduction of the contribution would necessarily be so infinitesimal as the result of the wage that may be paid to an injured workman, that it can scarcely be urged that the employer in the payment of such workman had any thought of the ultimate saving to himself by virtue of his commendable action in paying an amount based upon wages to one who, due to his injury, was not able to earn wages.

The position of the majority is based upon their construction of §1465-68 GC pointing to the fact that the section provides that the injured employee is only entitled to receive compensation "for loss" sustained on account of such injury and they hold that so long as the employee received his wages from his employer, even though he was injured, that he has suffered no "loss" and therefore is not entitled to be compensated by the State.

It will be noted that the employee is entitled to receive such compensation for "loss" sustained as provided in §§1465-79 to 1465-87 GC inclusive.

Sec 1465-79 GC provides for a payment of 66 2-3% of his "average weekly wages" so long as such disability is total.

Sec 1465-80 GC has a long schedule of compensations in case of partial disability, all of them based upon "average weekly wages". This is also true as to §§1465-81, 1465-82, 1465-84 and 1465-85 GC. In none of these sections or numerous subdivisions is there any repetition of the word "loss" and reading 1465-68 in reference to the other sections, it clearly appears that the legislative intent was that the "loss" was to be computed by these later sections, all based upon "average weekly wages".

The same is true for the allowance under §1465-68a GC in reference to occupational diseases, the payment to be based upon the same sections controlling the compensation for injuries and consequently based upon "average weekly wages".

Sec 1465-84 GC being short is quoted:
"The average weekly wage of the injured person at the time of the injury

shall be taken as the basis upon which to compute the benefits."

That Section does not say a word about the "loss" that may have accrued. We may justly infer that the measure of the "loss" as adopted by the statute is the "average weekly wage". The weekly wage measures the "loss" and fixes the amount to be paid without any diminution.

In only one §1465-61 GC, is there any reference to a diminution of the sum paid by reason of other sources of income. This section relates to policemen and firemen, where it is provided that if there be a municipal fund out of which these employees are paid, this may be considered in reducing the payment made out of the fund.

## WAS THE RELATOR PAID WAGES?

It is urged that the relator was paid wages by his employer from the day of his injury. What are wages? Wages are pay given for labor, usually mechanical, at short stated intervals, as distinguished from salaries or fees. Wages denote the price paid for labor, especially by the day or week and differ from salary. Webster's Unabridged Dictionary.

Manifestly the employer was not paying wages to the injured man because he was not paying for labor. The employee being totally incapacitated and unable to perform any labor, it is clear that the statement made that it was a gratuity paid to a faithful employee is a correct description of the contribution. It is urged by the majority that inasmuch as this payment was represented to the Commission as a payment of wages and was carried on the book as such, it is as a matter of fact a payment of wages, which is the basis of the compensation out of the fund and that there being no loss of such, there could be no compensation demanded. It seems to me that this is only a matter of bookkeeping. Had the employer wished to set up a special account labeled "Contribution" or "Gratuity" and carried the payment under that heading it would have made no difference. It was much more convenient and much simpler bookkeeping to continue it in the account where it had been carried when the money was actually paid to the employee as wages. The fact that it was so carried does not make it a payment of wages when no wages were earned and no wages due, nor take it out of the classification of a gift willingly given to an employee who had suffered a serious accident and was deserving of kindly treatment. To hold as the majority does would make any payment to an injured workman either out of a welfare fund provided by the employer or a benefit fund provided by employees mean a diminution of the loss and therefore a credit upon the sum due from the State fund. Such a construction would permit the state to profit by those benevolent actions toward the afflicted which are so highly commended and absorb the same by a petty, penny-pinching policy, to enrich the funds provided under the Constitution and the law to pay injured workmen.

I can not give my approval to a view of the law that would make it possible for the fund to be conserved to the extent of contributions to humanitarian purposes made either by the employer or by a group of employees or by a fraternal organization to ease the burden of one afflicted by a sudden disaster. Anyone having had experience with hospitalization and serious sickness is fully aware that expenses increase at an alarming rate and that the wage that would be sufficient to care for the workman and his family during health shrinks to an alarming extent. The afflicted workman and his family need aid from every available source. This workman is deserving and his employer kindly disposed to help, and it was no doubt remote from his thought that his beneficence would be tortured into a hard bargaining by which he was to have his contribution to the fund ultimately reduced.

The action of the State in attempting to profit by this is, in my judgment, unjustified and would lead to the withholding of funds needed by the injured workman, because the employer would realize that whatever he paid to him would not inure to his benefit but to the benefit of the State.

Twenty years ago the writer of this dissent, rendered an opinion in the case of Brunk v R. R. Co., 20 N.P. (N.S.) 360. I still think that the case is a correct statement of the principles there involved. It has stood for many years, without any criticism known to me. While the principles are not identical with those involved in this case, yet it is not without value in considering the matter now before us. The right to be compensated out of the fund accrued to the workman the instant of his injury, and payments made by others, including his employer, will not diminish the obligation of the fund to respond in the amount fixed by the statute.