**BAKER, etc. et v INDUSTRIAL COMM**

Ohio Appeals, 8th Dist, Cuyahoga Co

No 12214.   Decided March 6, 1933

Robert D. Godfrey, Cleveland, for plaintiffs in error.

John W. Bricker, Attorney General, Columbus, Donald. W. Hornbeck, Special Counsel, London, and W. R. Price, Assistant, for defendant in error.

LEVINE, J.

The major questions involved in this case are the following:

1. Is there any evidence that the death of Harry A. Hastings was caused by an injury he received in the course of his employment?

2. Did the court err in arresting the case from the jury and directing a verdict for the Industrial Commission of Ohio?

3. Did the court err in excluding statements alleged to have been made by Harry A. Hastings to Dr. Thomas, Mrs. Hastings and Dr. Masonheimer, narrating the circumstances under which he received the injury?

The record discloses that the decedent had a hernia on his right side for about fifteen years and wore a truss. There is no evidence that the same caused him any trouble or in any way interfered with his work and that he was apparently in healthy condition up to the time of the alleged injury.

It is contended by the plaintiffs that where a strangulated hernia results directly from a strain or over-exertion while the workman is performing the duties of his employment, that the same constitutes an injury within the meaning of the workmen's compensation act, even though there was a previously existing structural weakness at the point where the injury was received.

The case of **Industrial Commission of Ohio v Polcen, 121 Oh St 377,** supports the proposition of law contended for by the plaintiffs in error. The record seems to indicate that the strangulated hernia which he is alleged to have sustained was on the other side of his body.

The claim that a strangulated hernia resulted from the act of the decedent, Hastings, in lifting the can of oil from the rear part of Mr. Bachman's Ford coupe, is not directly denied, excepting that Mr. Bachman stated that on that particular day he carried a five gallon can of oil in the back of his car but he stated that he did not know whether Hastings lifted the can out of his car or not; that he did not learn of any trouble until he went to the company's Berea station and there learned for the first time that something happened and that Hastings was sick; that he went to the Hastings home about 5:30 o'clock P. M.; that he found Mr. Hastings in bed and that Hastings told him he was sick.

Mr. James L. Eckerfield testified that he lived about fifty feet away from the gasoline station where Hastings was working; that after dinner he saw Mr. Hastings working around the gasoline station; that not long after he had first noticed Mr. Hastings, he saw him stagger into the doorway of the gasoline station and that he went over to him. He stated that Hastings was lying on the floor and that he said, "I am sick." Thereupon Eckerfield stated that he helped take Mr. Hastings home.

Reference is made by defendant in error to the testimony of Dr. Masonheimer who stated that Hastings had a strangulated hernia. Dr. Masonheimer was not the family physician but was called in by Dr. Thomas who was the family physician, to operate on the strangulated hernia. Dr. Masonheimer further testified that Hastings died of post-operation pneumonia on June 9, 1929.

It is contended, therefore, by defendant in error that the record does not present a scintilla of evidence tending to show that the death of Harry A. Hastings came as a result of an injury which he received in the course of his employment. It is pointed out, by way of argument, that when you take away from this case the testimony of the doctors who examined him, who, in addition to the medical evidence given by them, related the statements made by the decedent as to how he was injured, namely, by the lifting of a can of oil, there is nothing left in the case to justify submission to the jury.

The most important question before us is: Was the trial court right in excluding the statement of the decedent, as to how he received his injury, to Dr. Thomas, Mrs. Hastings and Dr. Masonheimer? The referee who heard the witnesses on the rehearing, ordered by the Industrial Commission, excluded these statements and the trial court did likewise.

There is no unanimity of opinion on this subject. Of course, there is no question that the statements made by a patient to his attending physician immediately after the accident and under such circumstances as to lend character and color to the incident sought to be established, that such statements would be admissible on the ground that they are part of the res gestae. The admissibility of such statements in such event is founded not upon the relationship of patient to physician but the same would be admissible if made to any other person.

Whether or not the statements made by the decedent to Dr. Thomas at 9:00 o'clock P. M. of the same day, could be held admissible on the ground that the same con-

stituted a part of the res gestae, we are not deciding. It may well be contended, in view of the evidence offered by James L. Eckerfield and William Arthur Eckerfield, that the decedent fainted and fell to the floor of the station house about 6:30 o'clock P. M., that he was not brought home until after 7:00 o'clock P. M., and that all that time he was either in an unconscious or semi-conscious condition, groaning from pain and suffering, that a statement made by him on recovering full consciousness at 9:00 o'clock P. M. comes within the rule of admissibility on the ground of res gestae.

It is universally held that where a physician examines an injured person, not for the purpose of treatment but for the purpose of testifying as an expert as to the physical condition of such injured person, that such declarations are inadmissible. **Pennsylvania Company v Files, 65 Oh St 403.** But where it appears that the physician testifying was called by the injured person in his ordinary professional capacity, and for purposes of securing relief from pain, and for medical treatment, and there are no circumstances casting suspicion on the genuineness of the utterance, all statements of symptoms and sufferings whether past or present, and though involving statements as to the nature of the accident, if necessary to diagnosis by the physician, may be testified to by him. See Jones Commentaries on Evidence, Second Edition, Vol. 3, §1217. "Rather the admissibility of such statements is an exception to the general rule of evidence which has its origin in the necessity of the case. To the argument against their competency, founded on the danger of deception and fraud, the answer is that such representations are competent only when made to a person of science and medical knowledge who has the means and opportunity of observing and ascertaining whether the statements and declarations correspond with the condition and appearance of the person making them and the present existing symptoms which the eye of experience and skill may discover. Nor is it to be forgotten that statements made to a physician for the purpose of medical advice and treatment are less open to suspicion than the ordinary declarations of a party. They are made with a view to being acted upon in a matter of grave personal concernment, in relation to which the party has a strong and direct interest to adhere to the truth." From the opinion of Bigelow, CJ, in Barber v Marion, 11 All. 322 (See Wigmore on Evidence, Vol. 3, Second Ed., §1719).

There is a conflict of opinion as to the purpose for which such statements may be admitted. The better reason seems to be that when evidence is admissible on any single ground, it must be received and may be considered as proper evidence as bearing upon any of the issues of the case. This general principle is known as the principle of Multiple Admissibility. See Wigmore on Evidence, Vol. 3, §1720.

A careful examination of the authorities in Ohio reveals a scarcity of precedent on the subject. The case of **Elizabeth Dabbert v Travelers Ins. Co. of Hartford, Conn.,** reported in 2 **Cincinnati Superior Court Reports, p. 98,** deals directly with the question before us. The opinion was rendered by Taft, CJ, while a judge of the Superior Court of Cincinnati. It is held:

"In an action for a loss under a policy against death by accident, a statement made by deceased to his physician, upon which the physician forms his opinion, and makes a prescription, is competent evidence to prove what was the actual cause of his illness and death, although the symptoms are such as might be produced either by disease or by the accident."

Quoting from the opinion:

"The statements of the history of his case, made to his physician by a patient who is seeking relief from pain and severe sickness are entitled to credit. To state untruly to his doctor the cause of his sickness, would be directly against his most vital interest in saving his health and life. In such a case the absence of a statement by the patient of such a cause of his sickness would be an important element in forming the physician's opinion. For if a patient did not refer to such an accident as the cause of his sickness, the doctor would necessarily conclude that the symptoms did not come from such a cause. * * * The evidence in the case satisfies me that the deceased did suffer an injury by a fall. * * * He said so to his doctor when he sought relief from pain and sickness. It is not possible to conceive that he was, at that time, contriving to defraud the insurance company by dying a natural death under pretense of an accident."

The Industrial Commission of Ohio in the case of **Myrtle M. Walker v The Harper Drug Company, 13 Ohio Law Rep. 366,** fully approves and follows the principle laid down by Taft, J. The opinion rendered in this case is by Yaple, Chairman of the Industrial Commission of Ohio as of the date January 19, 1915. It is a very carefully considered opinion which reviews authorities both in England and in this country. Quoting from the opinion on page 369:

"We are of opinion that according to the decision of Taft, J, in the Dabbert case, supra, that such testimony should be admitted for what it is worth, as otherwise there would be a complete failure of justice in many meritorious cases. * * * But we are not required to confine ourselves to the rules of evidence prevailing in the courts. This commission is not a court. It is an administrative board similar to many other administrative boards such as the Interstate Commerce Commission, boards of county commissioners, boards of equalization, legislative investigation committees, etc., and in proceeding before such administrative bodies, it is not practicable to apply the strict rules of law or evidence. Such bodies, in practice, are free to adopt "short cuts" to arrive at ultimate facts and are usually not bound by the common law rules of evidence. Besides, in the Workmen's Compensation Act it is specifically provided that the industrial commission of Ohio shall not be so bound."

#### Sec 1465-61 GC:

"Such board (commission) shall not be bound by the usual common law or statutory rules of evidence or by any technical or formal rules of procedure other than as herein provided; but may make the investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of the act."

It is quite apparent that the statute above quoted, radically modifies the general rule of evidence excluding hearsay testimony. It would have been competent for the commission in the case at bar to make a short cut in its inquiry as to the cause of death and whether the same resulted from an injury to the decedent while in the course of his employment. The commission without question would have been authorized to hear the statements of both Dr. Thomas and Dr. Masonheimer for that purpose, even though the statements of these doctors deal in part with the narrative statements of the decedent dealing with the cause of the injury, and the circumstances under which he received the same. There is a sound discretion vested in the board by virtue of the general code, to ascertain the truth of a claim by what it considers reliable evidence, whether it be hearsay or otherwise. This discretion cannot be exercised in an arbitrary manner for it then ceases to be discretion.

It is quite clear to us that the workmen's compensation law must be liberally construed so as to carry out the purpose of its enactment. The statements of the decedent in the case at bar, it will be seen, deal merely with the circumstances under which he received his injury, which the doctors described as a strangulated hernia, namely, by the lifting of the can of oil from the back of an automobile, while he was working on his job as an attendant at a gasoline station of his employer. This statement of the deceased to Dr. Thomas, the attending physician, was necessary and essential in order to enable the doctor to properly prescribe for and treat the patient accordingly. It will be also seen that the statement of the decedent to Dr. Thomas does not deal with the question of negligence on the part of any one, because the question of negligence is not here involved. In a case such as this, it concerns instead the question of an accident while in the course of employment. The statements of a patient to his attending physician which tells not only of the injury which he received and the circumstances attending it, but also seeks to establish negligence on the part of any one, may be open to serious objection as the determination of the question of negligence is one of the ultimate questions which must be determined by the jury. We are, however, not dealing with such statements. Under the authorities cited, and having in mind the purpose of the enactment of the Workman's Compensation Act, the express authority given to the board to disregard common law and statutory rules of evidence or technical or formal rules of procedure, plus the admonition that the act shall be liberally construed so as to carry out the purpose of its

enactment, we are of the opinion that the Common Pleas Court was in error in excluding the testimony of Dr. Thomas as to the statements made to him by the decedent at nine o'clock P. M. on the day when the alleged accident occurred.

There are, in our opinion, other circumstances which lend credence to the statements alleged to have been made by the decedent to Dr. Thomas. Mr. Bachman, Secretary and Treasurer of the Kennedy Oil Company stated that he carried a five gallon can of oil in the back of his car on this day, but he did not know whether Hastings lifted this out of the car or not. This part of the statement alleged to have been made by decedent to Dr. Thomas, as to the presence of a five gallon can of oil in the back of the Ford car, is fully corroborated by the testimony of Mr. Bachman. The testimony of the Eckerfields who lived about fifty feet from the gasoline station, who stated that they saw Mr. Hastings working around the gasoline station, fully corroborates the statements alleged to have been made to Dr. Thomas that he was at the time of the alleged injury, working at the gasoline station. Mr. James Eckerfield further testified that not long after he saw Mr. Hastings working in the gasoline station, he saw him stagger in the doorway; that he found him lying on the floor of the gasoline station; that he heard him say that he was sick and that he (Mr. Eckerfield) and his son and a third person, took Mr. Hastings home.

We are of the opinion that to say the least there was a scintilla of evidence supporting the allegations of the plaintiffs in error that the decedent's death was caused by an injury which he suffered while in the course of his employment; that the Common Pleas Court was in error when it excluded the evidence offered by Dr. Thomas and when it directed a verdict in favor of the Industrial Commission of Ohio. This is clearly a jury question and the case should have been submitted to the jury.

The judgment is reversed and the cause remanded for further proceedings according to law.

McGILL, J, concurs in judgment.

LIEGHLEY, PJ, dissents.

McGILL, J, concurring:

The evidence in this case overwhelmingly establishes the fact that the decedent, Hastings, as an attendant was working at this gasoline station during the afternoon of May 30th, 1929. Late in the afternoon or early evening he was found unconscious on the floor of the gasoline station. He was taken home, put to bed and called Dr. Thomas for treatment the same evening. What, in the course of human events, could be more probable than Hastings' statement to Dr. Thomas that he sustained this injury by lifting a heavy can of oil? The very fact that Hastings made this statement for the purpose of diagnosis and treatment negatives the suggestion that the statement was false. The doctors testified that hernia was usually caused by strain. This man was found to be suffering with a strangulated hernia. The evidence showed that Hastings was working in that gasoline station where he was found on the floor unconscious. Where else, in the realm of probabilities, did Hastings sustain a strain that caused this hernia, if not in the course of his employment?

Hastings apparently was in good health before and after the noon hour; he was seen working in and about the gasoline station; and finally he was found unconscious at his post of duty.

In Industrial Commission cases the Legislature expressly stated that the commission was not bound by technical rules of evidence. This does not mean that evidence should not be confined within reasonable limits. But the purpose of that provision is to determine the truth by a liberal construction of the law.

If Hastings had lived, he could testify to the matters which the court below excluded. Such an interpretation as given by the court below works an injustice upon his dependents.

The circumstances under which Hastings made this statement to his attending physician, furnishes a reasonable guaranty of its reliability. The evidence establishes a strong probability that this hernia was received in the course of the employment under the facts and circumstances in this particular case.

I am of the opinion that this case should have been submitted to the jury.