Cody v. S.K.F. Industries, Inc. et al., Appellants.

Argued November 12, 1971. Before JONES, EAGEN, O'BRIEN, ROBERTS, and POMEROY, JJ.

reargument refused July 5, 1972.

*Roger B. Wood,* with him *Joseph R. Thompson,* for appellants.

*Stanley P. Stern,* for appellee.

OPINION BY MR. JUSTICE EAGEN, May 25, 1972:

For ten years prior to his death, Carl Cody, Jr., was an employee of S.K.F. Industries, Inc. His widow, alleging his death was the result of a compensable accident suffered in the course of his employment, filed a timely claim for Workmen's Compensation on behalf of herself and their five children under the Act of June 2, 1915, P. L. 736, as amended, 77 P.S. §1 et seq. Following an extended hearing, the referee entered an adjudication including findings of fact, conclusions of law and an award of compensation. Subsequently, the Workmen's Compensation Board affirmed the referee's adjudication and the award of compensation. Succes-

sive appeals to the Court of Common Pleas and the Commonwealth Court by S.K.F. and its insurance carrier proved unsuccessful. We granted allocatur to determine if the record includes sufficient competent evidence to sustain a finding that the decedent's death was caused by a compensable accident suffered in the course of his employment. We rule it does, and now affirm the Commonwealth Court's unanimous order affirming the compensation award.

The testimony before the referee included the following:

Carl Cody's primary duty in his employment with S.K.F. was chauffeuring its executives. He enjoyed general good health and a consistently good work record. On March 10, 1966, he checked out of work two hours early complaining of being "sick" and was given transportation part-way home by a fellow employee and took a taxicab the remaining distance. Upon arriving home, Cody complained of a severe headache and informed his wife that at work, after driving a company automobile into the executive garage, he was struck on the head and knocked to the ground by an overhead garage door. He reported for work on March 11th and 12th, but the headache did not abate and on the evening of March 12th Cody was confined to bed suffering from chills and general pain. On March 13th, the family physician was consulted to whom Cody described how on March 10th he had been hit on the head by the overhead garage door. On March 15th Cody's condition worsened and the physician ordered him transferred to a hospital. At this time, Cody was found to be suffering from high temperatures, severe headaches, periods of delerium and tosis of the eyelids. Cody remained in the hospital until March 27th, but was re-admitted on March 31st, when he underwent surgery to alleviate an infection in the subdural region of the brain. He died on April 10th.

To establish the causal connection between the alleged head injury and the ultimate death, the claimant produced a Dr. Theodore Kushner, a specialist in neurology and psychiatry. Dr. Kushner testified that in his opinion trauma to the head caused a blood clot, or a subdural hematoma of the tissue, and this became infected and the subdural collection of blood through the infection turned into a collection of pus, or a subdural empyema, and this was the cause of death. The doctor stated that an injury to the head was the only thing which could have caused the subdural empyema since there was no brain abscess or infection in the paranasal sinus or in the middle ear. He totally discounted the theory that the infection was blood borne since the blood supply to the subdural space is quite limited and there was no evidence of an infection in the lungs, kidneys, spleen or liver, thus the infection had to be a local condition and a head injury was the only possible cause.

Claimant also called Dr. Morris Segal, a surgeon with a background in head injury treatment, who testified that in his opinion the deceased had sustained a subdural hematoma, that eventually the hematoma became infected, and turned into an empyema and this was the cause of death. He stated that a trauma to the head was the only way the subdural hematoma could have developed.

The records of the hospital which included a history of the decedent's alleged accident, were also received in evidence over objection.

To rebut the testimony of the experts called by the claimant, appellants called Dr. Melvin N. Wood, the neurosurgeon who operated on the decedent and cared for him during his second admission to the hospital. Dr. Wood testified that the cause of death was a subdural empyema, but he was not able to say with medical

certainty what caused the condition, although he noted there was tenderness on an area of the skull, and he stated that it was possible, but not probable, that a head trauma could have precipitated Mr. Cody's death. Appellants also called Dr. Zung Pah Woo, a pathologist who did a large part of the autopsy protocol. Dr. Woo was also unable to say with medical certainty what caused the empyema, but could not discount the fact that a trauma could have caused the condition.

On the basis of this evidence, the referee granted the contested award to Mrs. Cody.

From the foregoing, it can readily be seen the finding of the compensation referee and the board that Cody suffered a compensable accident was necessarily bottomed on the testimony of Cody's widow and the Cody family physician as to what Cody related to them. The appellants contend this evidence was incompetent as hearsay and was erroneously considered by the fact finders over their objection.

We agree with the appellants that the testimony of the claimant-widow and the family physician as to the statements made to them by the decedent concerning the accident was not admissible as res gestae.

The law as it relates to the res gestae or spontaneous exclamation exception to the hearsay rule can be briefly summarized as follows. A res gestae declaration is a spontaneous utterance by an individual whose mind has suddenly been made subject to an overpowering emotion caused by some unexpected and shocking act or occurrence. *Allen v. Mack,* 345 Pa. 407, 28 A. 2d 783 (1942). The utterance is generated by, or springs out of the act, and the words are in a sense part of the act itself. *Haas v. Kasnot,* 371 Pa. 580, 92 A. 2d 171 (1952). Hence, the exciting events actually speak through the "verbal acts" of the declarant. The words, which are in the nature of this emotional impulsive

outburst, must be in the same continuous transaction with the acts, thus they are in a sense integrated into the acts. *Weshalek v. Weshalek*, 379 Pa. 544, 109 A. 2d 302 (1954); *Commonwealth v. Dessus*, 214 Pa. Superior Ct. 347, 257 A. 2d 867 (1969); *Wilf v. Philadelphia Modeling and Charm School, Inc.*, 205 Pa. Superior Ct. 196, 208 A. 2d 294 (1965); *Smith v. State Workmen's Insurance Fund*, 140 Pa. Superior Ct. 602, 14 A. 2d 554 (1940). The utterance must be near in time to the occurrence[1] and to insure trustworthiness it normally must be spoken to one of the first persons seen by the declarant after the act. *Ceccato v. Union Collieries Co.*, 141 Pa. Superior Ct. 440, 15 A. 2d 401 (1940); *Watson v. A. M. Byers Co.*, 140 Pa. Superior Ct. 245, 14 A. 2d 201 (1940); *Heite v. Vare Construction Co.*, 129 Pa. Superior Ct. 204, 195 A. 437 (1937). The basis for the admission of the utterance is its spontaneity, thus all utterances which do not display the mandated instinctive naturalness must be excluded for fear that the words will emanate in whole or in part from the declarant's reflective faculties. The declaration must be spoken under conditions which insure that it is not the result of premeditation, consideration or design, and it cannot be in the form of a narration or attempted explanation of past events, thus the process of the intellect cannot have had an opportunity to be set in motion. *Commonwealth v. Cheeks*, 423 Pa. 67, 223 A. 2d 291 (1966); *Weshalek v. Weshalek*, supra; *Haas v. Kasnot*, supra. The exciting event, closely followed by the spontaneous exclamation emanating from the event,

---

[1] No definite limit has been fixed by the courts in determining what utterances are part of the res gestae. Each case must stand on its own facts and circumstances, and the length of time is only one of the elements to be considered in determining if the utterance comes within the rule. See *Commonwealth v. Cheeks*, 423 Pa. 67, 223 A. 2d 291 (1966); *Commonwealth v. Stallone*, 281 Pa. 41, 126 A. 56 (1924).

insures the truthfulness of the declaration, thus allowing for its admission into evidence.

Under these principles we are compelled to conclude that the statements made by the decedent concerning the accident to his wife were not within the res gestae exception. We do not view these as spontaneous utterances springing out of the act. Initially, we note that the words were not in "the same continuous transaction" with the act of being struck over the head with the garage door. There was a distinct break in the continuity during which time the decedent had seen a number of other people, to whom he did not mention anything about the accident. Moreover, during this time the requisite spontaneity vanished as the decedent's reflective faculties resumed functioning. Thus, the statements were the result of consideration, and must be viewed as a narration or explanation of the past event. Consequently, we conclude that the statements to the wife were hearsay and not competent evidence to support the finding that decedent suffered a compensable accident.

Next, we turn our attention to the testimony of the family physician, Dr. Cannon. The relevent facts pertaining to his testimony are: Dr. Cannon was called to administer treatment to the decedent at his home three days after the accident. Over objection of appellants' counsel, the Doctor testified that decedent had explained to him that on Thursday preceding the examination the decedent was struck over the head with a garage door. Based on the law before stated, we likewise rule this testimony was not admissible as res gestae. The foundation of res geatae rests on spontaneity, the statement must spring out from the act, and as we view the statements to the Doctor, the requisite sponaneity is clearly lacking. The statements related to the Doctor were made three days after the accident.

Under the facts of the present case, the statement must be viewed as a narration or explanation of a past event. The statement cannot be viewed as part of the "same act" as the blow on the head, and hence cannot be considered as part of the res gestae exception to the hearsay rule.

However, simply because Dr. Cannon's testimony does not fit within one exception to the hearsay rule does not automatically exclude it from qualifying under another exception to the hearsay rule. Claimant asserts that the statement in question is an exception to the hearsay rule under the statement to physician exception, and with this proposition we agree.

The law in Pennsylvania heretofore has been that statements to a doctor were admissible insofar as they were necessary and proper for diagnosis and treatment of the injury and referred to symptoms, feelings and conditions. However, statements which related to the cause of the injury were not admissible, unless they were part of the res gestae. See generally, *Foulkrod v. Standard Accident Insurance Co.*, 343 Pa. 505, 23 A. 2d 430 (1942); *Boyle v. Philadelphia Rapid Transit Co.*, 286 Pa. 536, 134 A. 446 (1926); *Riley v. Carnegie Steel Co.*, 276 Pa. 82, 119 A. 832 (1923); *Eby v. Travelers Insurance Co.*, 258 Pa. 525, 102 A. 209 (1917); *Gosser v. Ohio Valley Water Co.*, 244 Pa. 59, 90 A. 540 (1914); *Paull v. Meyers*, 200 Pa. Superior Ct. 74, 186 A. 2d 849 (1962).

Upon re-examining this rule, we believe a necessary exception must be carved out where, in a workmen's compensation proceeding, the board is dealing with an unwitnessed occurrence case and where the party involved has died.

At least one modern commentator of recognized merit has suggested the adoption of such an exception. It is stated: "It would seem, moreover, that the same practical guaranty of trustworthiness would attach to

those parts of the 'history' given by the patient to the doctor for treatment which describe the general character of the cause or external source of the condition to be treated, so far as this description is pertinent to the purpose of treatment. The professional standards for the regulation of hospitals require the gathering of this information from the patient and the person treated will be fully conscious that his treatment may well be affected by his report as to the cause, whether a fall, a crushing by a heavy object, or a collision. Other features of the incident, such as the place where it occurred or who was at fault, seem unrelated to treatment. Some courts have accepted the view that these statements as to external cause when relevant to treatment and made to a doctor employed for that purpose are evidence of the fact stated. This conclusion particularly in actions for death where there were no eyewitnesses other than the victim, seems the view most consonant with the demands of justice." McCormick on Evidence, §266, p. 564 (1954).

Such an exception to the hearsay rule can be justified on grounds of circumstantial guarantee of trustworthiness and necessity. As to trustworthiness, for a patient to misrepresent to a treating physician the cause of his physical injury would be totally contrary to his most vital concern of saving his life and restoring his health. Moreover, statements as to cause, as long as they are germane to treatment are inseparable from the description of the injury and the pain it is causing the declarant. We believe that as long as there are no circumstances casting suspicion on the genuineness of the utterances, statements as to cause clearly meet the trustworthiness test.[2] Cf. Jones, Commentaries on Evi-

---

[2] As pertinently pointed out in *Greenfarb v. Arre*, 62 N.J. Super. 420, 434, 163 A. 2d 173, 181 (1960) : "The touchstone in cases like this is the trustworthiness of what the patient told his physician, and

dence, §1217, p. 2234 (2d ed. 1926). In the instant case, there is no question that the statement meets this test. Here, the deceased was confined to bed with a severe headache and suffering from chills and generalized pain. For a man to lie about the cause of his ailment while in this condition is not reasonable. Moreover, Dr. Cannon stated that this type of history was necessary for treatment, and the evidence was given in response to one of his questions.

Turning to the necessity aspect of the test, it is clear that there is a necessity to admit this testimony as substantive evidence of the facts stated in the instant case. It must be remembered that we are dealing with an unwitnessed occurrence, consequently the only witness able to relate the cause of the injury is the injured party, and he is now dead. Hence, there is a pressing necessity to admit this evidence since it is not available from any other source.[3] Moreover, there are no circumstances making it suspect.

We believe this exception to the hearsay rule represents a more flexible approach to the problem, and is more consonant with the demands of justice and more adequately represents the policies of the Workmen's

---

here one must consider the whole range of circumstances: how soon after the alleged accident the statement was made, the condition of the employee at the time he spoke to his physician, and whether the physician pursued his inquiry in order to arrive at a diagnosis and a course of proper treatment." The instant case fulfills the necessary requirement of this test.

[3] Wigmore in his treatise on Evidence [6 Wigmore, Evidence §1722 (3d ed. 1940)] expressed the view that there is no necessity since other evidence is presumably available; however, from the facts of cases of the instant nature, it is clear that this assertion is not valid. Professor Wigmore also expressed the view that the statements are not trustworthy; however, we do not accept the view that these statements are suspect, unless there is evidence to the contrary. See *Greenfarb v. Arre*, 62 N.J. Super. 420, 163 A. 2d 173 (1960), wherein Wigmore's analysis is also rejected.

Compensation Act.[4] The courts of our sister state, New Jersey, adopted this position in the case of *Greenfarb v. Arre*, 62 N.J. Super. 420, 163 A. 2d 173 (1960), wherein the New Jersey Superior Court placed reliance on the following language from *Bober v. Independent Planting Corp.*, 28 N.J. 160, 145 A. 2d 463 (1958) : " 'It is evident that the answers and information given by the patient during the doctor's probing for possible causes of the condition have the same driving and spontaneous motivation for truthfulness as in the usual case to be found in the reports where the hearsay exception has been recognized. In our judgment, therefore, the history thus gleaned which described the inception, the general character of the cause or external source of the condition to be treated, so far as it is pertinent to the purpose of diagnosis and treatment, is within the rule and admissible as substantive evidence. Cf. McCormick on Evidence, 564 (1954) ; Stewart v. Baltimore & Ohio R. Co., 137 F. 2d 527, 530 (2d Cir. 1942) ; Baker v. Industrial Commission, 44 Ohio App. 539, 186 N.E. 10 (Ct. App. 1933) ; Dabbert v. Travelers' Ins. Co., 13 Ohio Dec. (Reprint) 792 (1870) ; Ferne v. Chadderton, 375 Pa. 302, 100 A. 2d 854 (1953) ; Hammond v. Industrial Commission, 84 Utah 67, 34 P. 2d 687 (1934).' " 62 N.J. Super. 430, 163 A. 2d at 179. The *Greenfarb* court then went on to hold that the rule should be applied and other courts have adopted rules of this general nature, finding justification in the necessity aspect of the cases. See generally *Moore v. Atlanta Transit System, Inc.*, 105 Ga. App. 70, 123 S.E. 2d 693 (1961) ; *Lathem v. Hartford Accident & Indemnity Co.*, 60 Ga. App. 523, 3 S.E. 2d 916 (1939) ; *Shell Oil Co. v. Industrial Commission*, 2 Ill. 2d 590, 119 N.E. 2d 224 (1954) ; *Baker v. Industrial*

---

[4] We leave for another time and appropriate case the question of whether this rule would apply outside the workmen's compensation area.

*Commission,* 44 Ohio App. 539, 186 N.E. 10 (1933); *Hillman v. Utah Power & Light Co.,* 56 Idaho 67, 51 P. 2d 703 (1935); *Hammond v. Industrial Commission,* 84 Utah 67, 34 P. 2d 687 (1934); *Peterson v. Industrial Commission,* 83 Utah 94, 27 P. 2d 31 ( 1933). We, therefore, hold that the statement of the deceased to his treating physician that he was struck on the head by an overhead. garage door on the preceding Thursday was under the circumstances admissible as substantive evidence.

With these rulings on the competency of evidence in mind, we believe that there was enough evidence on the record for the referee to determine that the decedent experienced a compensable accident in the course of his employment. The happening of an accident followed by death, for which compensation is claimed, may be established by circumstantial evidence. See generally for a statement and application of this rule. *Jessie v. Dash,* 194 Pa. Superior Ct. 1, 165 A. 2d 280 (1960); *Ceccato v. Union Collieries Co.,* 141 Pa. Superior Ct. 440, 15 A. 2d 401 (1940); *Broad Street Trust Co. v. Heyl Brothers,* 128 Pa. Superior Ct. 65, 193 A. 397 (1937); *Nesbit v. Vandervort & Curry,* 128 Pa. Superior Ct. 58, 193 A. 393 (1937). The circumstantial evidence of the case shows, that the deceased was a man of apparently excellent health prior to the day in question; he left work two hours early, checking out as sick; he was driven part-way home by a fellow employee and took a taxicab the remaining distance (there is not the slightest suggestion that the injury occurred on his way to, or, returning from work); the testimony of his wife that upon arriving home he complained of a headache and looked to be in a great deal of pain; the injury was naturally connected with his responsibilities as a chauffeur and maintenance man for the executive garage (it should be noted that the records of S.K.F. showed the decedent took a car out of the garage the day in question); the testimony of Heston Cooper, a

fellow employee that on the day in question the deceased was seen huddled in the back seat of a company car and complained of being very ill; the testimony of Dr. Wood that there was evidence of tenderness of the skull; lastly, the testimony which established that the deceased's condition could not have been latent. We believe that there was sufficient competent evidence,[5] direct and circumstantial, upon which the triers of fact could make findings of fact that the decedent suffered a compensable accident in the course of his employment, and upon those findings render a favorable award to the claimant.

In view of the foregoing conclusion, it is unnecessary for us to consider the admissibility and impact of the challenged portion of the hospital records.

Finally, we reject appellants' position that the medical evidence was insufficient to support the finding by the board that the decedent's death resulted from the accident.

The order of the Commonwealth Court and the judgment entered in the court of original jurisdiction are affirmed.

Mr. Justice Roberts concurs in the result, believing that the statement given by the deceased declarant to the doctor was pathologically germane and thus admissible.

Former Mr. Chief Justice Bell and former Mr. Justice Barbieri took no part in the consideration and decision of this case.

---

[5] As the Commonwealth Court correctly pointed out, on a workmen's compensation case where the facts are sufficiently established by circumstantial evidence, hearsay testimony not inconsistent therewith, if relevant and material to the fact at issue, may be considered for the additional light, if any, that it throws on the matter. See *Giordano v. Bianco*, 204 Pa. Superior Ct. 219, 203 A. 2d 396 (1964) ; *Nesbit v. Vandervort & Curry*, supra. With this in mind, we are convinced that the finder of fact was justified in his findings.