House Moving and Industrial Rigging, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Dolores T. Henchell, Widow of Gerald A. Henchell, Deceased, Respondents.

Argued June 9, 1978, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*C. S. Fossee,* with him *Murovich, Reale & Fossee,* for petitioner.

*Jan C. Swensen,* with him *Scott, Swensen & Scott,* and *James N. Diefenderfer,* for respondents.

OPINION BY JUDGE MENCER, September 22, 1978:

House Moving and Industrial Rigging, Inc. (HMIR) appeals from an order of the Workmen's Compensation Appeal Board affirming a referee's award of death benefits to Dolores T. Henchell, the widow of Gerald A. Henchell. We affirm.

Gerald Henchell (Henchell) was employed by HMIR as a laborer. On November 25, 1972, while in the course of his employment, Henchell was in an accident which resulted in a back injury. On December 5, 1972, he was admitted to a hospital where sur-

gery on his back was performed. His treating physician regarded his recovery as good and approved his return to work on April 10, 1973. Henchell returned to his old job and worked a normal schedule until his death on June 25, 1973. However, according to the testimony of Mrs. Henchell, throughout the period from the surgery until his death Henchell suffered periodically from severe chest pains, numbness in his arms, nausea and vomiting, cyanosis, shortness of breath, and exhaustion. These symptoms were not reported to Henchell's physician, however. The immediate cause of his death on June 25 was determined to be an acute coronary thrombosis, *i.e.*, a blood clot in a coronary artery.

Mrs. Henchell's fatal claim petition alleged that the back injury and surgery led to the thrombosis and Henchell's death. After several hearings, the referee agreed, making the following findings of fact:

SEVENTH: At the time of said accident and at the time of the back surgery, Gerald Henchell had a heart condition which was unknown to him and was not revealed by tests conducted while he was hospitalized in December 1972. Such tests consist of a chest x-ray and an electro-cardiogram, both of which were normal.

EIGHTH: The immediate cause of death was a coronary thrombosis.

NINTH: Gerald Henchell never fully recovered from the injury suffered November 25, 1972.

TENTH: The accident of November 25, 1972 and the subsequent hospitalization and surgery necessitated by the accident so aggravated Gerald Henchell's pre-existent heart condition

that it hastened and resulted in his death, which occurred on June 25, 1973.

If, as the referee found, the accident and subsequent surgery did in fact hasten Henchell's death, benefits were properly awarded to Henchell's widow. *See, e.g., Parks v. Winkler,* 199 Pa. Superior Ct. 224, 184 A.2d 124 (1962) (death caused by immobilization following surgery necessitated by accident); *Thomas v. Susquehanna Collieries Co.,* 148 Pa. Superior Ct. 161, 169, 25 A.2d 98, 102 (1942); 1 A. Barbieri, *Pennsylvania Workmen's Compensation and Occupational Disease,* §6.21(6)(f)-(h) (1975). This aspect is not disputed.

HMIR contends, however, that there is no competent evidence to support a finding that Henchell's death was in any way related to the accident or surgery. In examining this contention, we must, of course, consider the evidence in the light most favorable to the party who prevailed before the referee and the Board, here Mrs. Henchell. *See, e.g., Stump v. Follmer Trucking Co.,* 4 Pa. Commonwealth Ct. 110, 286 A.2d 1 (1972).

HMIR's major contention is that Mrs. Henchell's testimony concerning the symptoms experienced by her husband after the surgery and prior to his death was hearsay and therefore incompetent to support the referee's findings. Mrs. Henchell is a registered nurse, and her testimony was in large part based upon her own observations of her husband's behavior, *e.g.,* his vomiting, poor color, apparent exhaustion after work, and his manifestations of pain. However, her testimony was also based in part upon Henchell's statements to her concerning his physical condition, *e.g.,* his reports of chest pains and numbness in his arms. To the extent that Mrs. Henchell's testimony was based on such reports, we believe the evidence

was admissible in a workmen's compensation case as an exception to the hearsay rule.

The prevailing view in other jurisdictions in non-workmen's compensation cases appears to be that statements of a declarant's *then existing physical condition,* such as expressions of pain, are admissible as exceptions to the hearsay rule, regardless of to whom the statements are directed. *See, e.g.,* Fed R. Evid. 803(3), 6 J. Wigmore, *Evidence* §§1718, 1719 (Chadbourn rev. 1976); C. McCormick, *Evidence* §265 (1954). Although this exception has apparently never been explicitly recognized in Pennsylvania, neither the Board nor the referee are bound by the technical rules of evidence. Section 422 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §834. In addition, our Supreme Court has indicated that the exceptions to the hearsay rule may be more flexibly applied in workmen's compensation cases than in other areas. *See Cody v. S.K.F. Industries, Inc.,* 447 Pa. 558, 566-69, 291 A.2d 772, 776-77 (1972).[1] Even assuming that the prevailing view will not be recognized generally in Pennsylvania, we believe that the humanitarian purposes of the Act require it to be recognized in workmen's compensation cases such as this where

---

[1] HMIR's reliance upon *Cody* is misplaced. That case held, *inter alia,* that a husband's account of an accident at work, related to his wife at some time after the accident, was incompetent to support the finding that a compensable accident had occurred. The case is inapposite because the portion of the husband's statement concerning the prior accident was not a statement of his *then existing physical condition.* The holding of *Cody* is apparently in accord with the prevailing view in other jurisdictions in non-workmen's compensation cases. *See, e.g.,* McCormick, *Evidence,* §265 at 562 n. 8 (1954). (The husband in *Cody* also told his wife that he had a headache, but this portion of the statement was not at issue. If relevant, the prevailing view would allow the admission of such a statement. *Id.*)

the declarant is deceased and unable to testify. We therefore hold that Mrs. Henchell's testimony, in its entirety, is competent evidence to support the referee's findings.[2]

HMIR also argues that the medical evidence was not sufficiently unequivocal to support the finding that the back injury and surgery hastened Henchell's death. This argument is without merit. Dr. Cyril Wecht, the coroner of Allegheny County, testified without equivocation that, in his opinion, the trauma associated with the accident and the surgery placed increased demand on Henchell's heart. In Dr. Wecht's opinion, Henchell was already suffering from arteriosclerosis,[3] and his arteries were therefore incapable of supplying a sufficient flow of blood to his heart to meet the increased burden. According to Dr. Wecht, this "artery insufficiency" resulted in the chest pains and other symptoms described by Mrs. Henchell. These symptoms served to further increase the strain on Henchell's heart, culminating in the formation of the blood clot which directly caused Henchell's death. This testimony in itself is sufficient to support the referee's finding. Moreover, the expert witness called in rebuttal by HMIR agreed that trauma associated with pain and surgery could indeed cause the formation of a blood clot in a person already suffering from arteriosclerosis, although he was of the opinion that this had not happened in Hen-

---

[2] The fact that Henchell never reported any problems to his physician is some evidence that he in fact experienced no symptoms such as those described by Mrs. Henchell. However, the testimony of the physician and Henchell's fellow workers was in agreement that Henchell was more likely to attempt to conceal physical pain than to complain about it. In light of this evidence, we cannot hold that the referee erred in accepting Mrs. Henchell's testimony as true.

[3] Henchell's arteriosclerosis is apparently the preexisting "heart condition" referred to by the referee in his findings of fact.

chell's case. The referee's resolution of this conflict
was clearly reasonable and will not be disturbed.[4]
*See, e.g., Czankner v. Sky Top Lodge, Inc.*, 13 Pa.
Commonwealth Ct. 220, 308 A.2d 911 (1973).

HMIR also argues that, after Mrs. Henchell had
testified on direct examination, the referee made a
remark which indicated that he had already decided
the case in her favor.[5] We fail to see any indication
of bias in the referee's remarks. Moreover, HMIR
never objected to the remark or made a motion that
the referee disqualify himself. Rather, HMIR pro-
ceeded to cross-examine Mrs. Henchell and to partici-
pate in three more scheduled hearings on the matter.
Under these circumstances, any objections as to the
referee's alleged bias were clearly waived.

We find merit in HMIR's contention that it should
not be required to pay Mrs. Henchell's attorney's fees
under Section 440 of the Act, added by Section 3 of
the Act of February 8, 1972, P.L. 25, 77 P.S. §996.
Since the status of Mrs. Henchell's hearsay testimony
under Pennsylvania law was uncertain at the time of
the hearing, and since Dr. Wecht relied heavily upon
Mrs. Henchell's testimony, we believe that HMIR had
a reasonable basis for contesting the award. We will
therefore reverse the order of the Board insofar as
it ordered HMIR to pay Mrs. Henchell's attorney's
fees.

---

[4] Neither Dr. Wecht nor HMIR's expert witness had personally
examined Henchell either before or after his death. Henchell's treat-
ing physician declined to express any opinion on the relationship
of the accident and surgery to Henchell's death.

[5] The remarks of the referee to which challenge is made are
as follows:

> I think personally you have established your case. I
> think at this time, if you could offer medical or something
> to that effect. You need the Death Certificate. If there is
> a funeral bill, you need that. If there are any unpaid hos-
> pital bills, you need that. Or Doctor bills.

## ORDER

AND NOW, this 22nd day of September, 1978, the appeal of House Moving and Industrial Rigging, Inc., is hereby dismissed, and the order of the Workmen's Compensation Appeal Board, dated May 5, 1977, affirming the award of a referee dated March 10, 1976 is hereby affirmed in part and reversed in part. Accordingly, it is ordered that judgment be entered in favor of Dolores T. Henchell, widow of Gerald A. Henchell, deceased, and against House Moving and Industrial Rigging, Inc., in the amount of $94 per week, beginning June 25, 1973 and continuing into the future, together with interest at the rate of 10 percent per annum on deferred payments of compensation from the date due to the date paid, all within the terms and limits of The Pennsylvania Workmen's Compensation Act.

In addition, House Moving and Industrial Rigging, Inc., is directed to reimburse Dolores T. Henchell for reasonable burial expense, in the amount of $750, and to pay the following bills of costs:

| | |
|---|---|
| Cyril Wecht, M.D., a witness | $500.00 |
| Cornelia Lukitsh, a witness | 12.00 |
| Thomas Malloy, an investigator | 432.20 |
| Coroner's report | 5.00 |
| South Side Hospital records | 20.00 |

The order of the Board dated May 5, 1977, insofar as it affirms the order of the referee directing House Moving and Industrial Rigging, Inc., to pay Dolores T. Henchell's attorney's fees, in the amount of 20 percent of the referee's award, is hereby reversed.

---

DISSENTING OPINION BY JUDGE WILKINSON, JR.:

As acknowledged by the majority opinion, the physician who treated the decedent declined to express

an opinion on the relationship of the accident and surgery to the decedent's death. The decedent never related the "symptoms" to his doctor that the widow was permitted to testify he related to her. Based on these clearly hearsay statements another physician who never personally examined the decedent was permitted to give the essential medical testimony on which this award is based. I cannot stretch the humanitarian purposes of the act to permit the person who is to benefit to be given such a tempting exception to the hearsay rule. I respectfully dissent.