554 A.2d 525

**John R. HREHA**

**v.**

**Judith L. BENSCOTER, D.O. and Metropolitan Hospital–Springfield Division.**

**Appeal of METROPOLITAN HOSPITAL–SPRINGFIELD DIVISION.**

**John R. HREHA, Appellant,**

**v.**

**Judith L. BENSCOTER, D.O. and Metropolitan Hospital–Springfield Division, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 7, 1988.

Filed Jan. 24, 1989.

Reargument Denied March 9, 1989.

558

Andrew F. Napoli, Philadelphia, for appellant in No. 983, and appellee in No. 1031.

Herbert Monheit, Philadelphia, for appellant in No. 1031, and appellee in No. 983.

Before WIEAND, McEWEN and MELINSON, JJ.

WIEAND, Judge:

In this medical malpractice action, John R. Hreha sought to recover damages against Dr. Judith L. Benscoter and the Metropolitan Hospital, Springfield Division, for complications following the surgical replacement of his hip. The jury before whom the action was tried found that the causal negligence of the hospital was fifty (50%) percent, the causal negligence of Dr. Benscoter fifteen (15%) percent, and the causal negligence of Hreha thirty-five (35%) percent. The same jury found that Hreha's damages were in the amount of $350,000. A motion for post-trial relief was filed by the hospital and denied by the trial court; and Hreha's petition for delay damages was also denied.[1] Both parties appealed.

As a result of a biopsy performed on August 8, 1983, plaintiff was diagnosed as having vascular necrosis with degenerative arthritis of the right hip. Therefore, on August 23, 1983, hip replacement surgery was performed by Dr. Benscoter at the Metropolitan Hospital. Following surgery, plaintiff was put on complete bed rest, and side rails were placed on his bed. Plaintiff made an unsuccessful attempt to get out of bed on August 27, and on the following day, August 28, he was found standing beside his bed by an intern. Because of this, x-rays were taken and disclosed that a hip prosthesis had become dislocated. This made necessary a second operation, which was performed by Dr. Benscoter on August 30, 1983. On September 1, 1983, plaintiff again got out of bed and was found lying on the floor by a nurse. Thereafter, Dr. Benscoter ordered that posey restraints be employed to keep plaintiff in bed. Cultures taken during the second operation disclosed that an infection had developed, and plaintiff was subsequently

---

1. Post-trial motions were also filed by Dr. Benscoter, but these were subsequently withdrawn.

transferred to the University of Pennsylvania Hospital for further treatment. This treatment included additional surgery to remove the head of the femur (known as a girdlestone procedure) and entailed a lengthy hospitalization. Plaintiff claimed that as a result of this procedure, his right leg was permanently shortened. He contended at trial that Metropolitan Hospital and Dr. Benscoter had failed to provide adequate post-operative care and that the hospital and operating surgeon had failed to observe proper surgical procedures which enabled the infection to invade his body.

■ The hospital contends on appeal that the trial court should have entered judgment n.o.v. in its favor because Dr. Herbert Swindell, plaintiff's only medical expert, gave conflicting testimony and failed to express an opinion to the required degree of medical certainty regarding the cause of plaintiff's complications following surgery. The required degree of medical certainty necessary to prove causation was reviewed by the Superior Court in *Kravinsky v. Glover*, 263 Pa.Super. 8, 396 A.2d 1349 (1979). The Court there said:

> When a party must prove causation through expert testimony the expert must testify with "reasonable certainty" that "in his 'professional opinion, the result in question did come from the cause alleged.'" *McCrosson v. Philadelphia Rapid Transit Co.*, 283 Pa. 492, 496, 129 A. 568, 569 (1925). See *Hamil v. Bashline, supra.* An expert fails this standard of certainty if he testifies "'that the alleged cause "possibly", or "could have" led to the result, that it "could very properly account" for the result, or even that it was "very highly probable" that it caused the result.' *Niggel v. Sears, Roebuck & Co.*, 219 Pa.Super. 353, 354, 355, 281 A.2d 718, 719 (1971); *Menarde v. Philadelphia Trans. Co.*, 376 Pa. 497, 103 A.2d 681 (1954); *Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199, 133 A. 256 (1926); *Moyer v. Ford Motor Co.*, 205 Pa.Super. 384, 209 A.2d 43 (1965)." *Albert v. Alter*, 252 Pa.Super. 203, 225, 381 A.2d 459, 470 (1977).

"The issue is not merely one of semantics. There is a logical reason for the rule. The opinion of a[n] ... expert is evidence. If the fact finder chooses to believe it, he can find as fact what the expert gave as an opinion. For a fact finder to award damages for a particular condition to a plaintiff it must find as a fact that the condition was legally caused by the defendant's conduct.... [I]t is the intent of our law that if the plaintiff's ... expert cannot form an opinion with sufficient certainty so as to make a [professional] judgment, there is nothing on the record with which a [factfinder] can make a decision with sufficient certainty so as to make a legal judgment." *McMahon v. Young*, 442 Pa. 484, 486, 276 A.2d 534, 535 (1971). However, to make an admissible statement on causation, an expert need not testify with absolute certainty or rule out all possible causes of a condition. *Bialek v. Pittsburgh Brewing Company*, 430 Pa. 176, 242 A.2d 231 (1968); *Ritson v. Don Allen Chevrolet, supra* [233 Pa.Super. 112, 336 A.2d 359 (1975)]. *Expert testimony is admissible when, taken in its entirety, it expresses reasonable certainty that the accident was a substantial factor in bringing about the injury. Hussey v. May Department Stores, Inc., supra,* 238 Pa.Super. [431] at 437, 357 A.2d [635] at 638 [(1976)]. *The expert need not express his opinion in precisely the same language we use to enunciate the legal standard.* See *In re Jones,* 432 Pa. 44, 246 A.2d 356 (1968) (medical testimony need not conform to precise statutory definitions). *That an expert may, at some point during his testimony, qualify his assertion does not necessarily render his opinion inadmissibly speculative. Woods v. Pleasant Hills Motor Company,* 454 Pa. 224, 309 A.2d 698 (1973); *Commonwealth v. Joseph,* 451 Pa. 440, 304 A.2d 163 (1973).

*Id.,* 263 Pa.Superior Ct. at 21–22, 396 A.2d at 1355–1356 (emphasis added) (footnotes omitted). See also: *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978); *Pirches v. General Accident Insurance Co.,* 354 Pa.Super. 303, 511 A.2d 1349 (1986); *Williams v. Dulaney,* 331 Pa.Super. 373,

480 A.2d 1080 (1984); *Walsh v. Snyder,* 295 Pa.Super. 94, 441 A.2d 365 (1981); *Smialek v. Chrysler Motors Corp.,* 290 Pa.Super. 496, 434 A.2d 1253 (1981); *Sears, Roebuck & Co. v. Workmen's Compensation Appeal Board,* 48 Pa. Cmwlth. 161, 409 A.2d 486 (1979).

We have reviewed the testimony of Dr. Swindell and have determined that it contained the required degree of medical certainty with respect to the causation of plaintiff's post-operative complications. "That he may have used less definite language in other parts of his testimony did not render his opinion inadmissibly speculative, as long as he stated his opinion with sufficient definiteness at some point." *Pirches v. General Accident Insurance Co., supra* 354 Pa.Super. at 310, 511 A.2d at 1353. See also: *Brannan v. Lankenau Hospital,* 490 Pa. 588, 596–597, 417 A.2d 196, 200 (1980); *Kravinsky v. Glover, supra* 263 Pa.Super. at 22 & n. 11, 396 A.2d at 1356 & n. 11. Metropolitan Hospital's reliance on an isolated remark made by Dr. Swindell on cross-examination, that it was *"possible"* that the amount of drugs given to the plaintiff had a cumulative effect, does not require that his medical opinion be rejected.

■ The hospital also contends that the trial court erred when it permitted Dr. Swindell to express an opinion regarding the cumulative effect of the drugs which had been administered to the plaintiff. It was error, it is argued, because the expert conceded that he was unfamiliar with ancef, one of the drugs administered to plaintiff. However, the physician's testimony concerned the cumulative effect of the narcotic drugs which had been administered to plaintiff. Ancef is not a narcotic or mind-altering drug; it is an antibiotic. In view of the fact that the jury was made aware that Swindell's opinion had referred only to the effect of narcotic drugs, the trial court's ruling did not constitute a basis for awarding a new trial.

■ The hospital argues next that the jury's apportionment of negligence between the hospital and the surgeon was contrary to the weight of the evidence because "[a]ll throughout the trial, plaintiff's testimony pointed to a joint

responsibility of the surgeon and the hospital and, ... [i]f there was going to be a verdict against both defendants, the overwhelming weight of the evidence warranted a verdict against both defendants at least in equal amounts." We are compelled to disagree.

" 'In reviewing a denial of a new trial where the appellant argues that the verdict was against the weight of the evidence, we must award a new trial only where the verdict is so contrary to the evidence as to shock this Court's sense of justice.' " *Cervone v. Reading*, 371 Pa.Super. 279, 286, 538 A.2d 16, 20 (1988), quoting *Bolus v. United Penn Bank*, 363 Pa.Super. 247, 259, 525 A.2d 1215, 1221 (1987). The allocation of 50 percent of the causal negligence to Metropolitan Hospital did not shock the conscience of the trial court and does not violate our sense of justice. Under the Comparative Negligence Law, 42 Pa.C.S. § 7102(a), the allocation of causal negligence was a matter properly for the jury to determine. See: *White v. Southeastern Pennsylvania Transportation Authority*, 359 Pa.Super. 123, 518 A.2d 810 (1986); *Beary v. Pennsylvania Electric Co.*, 322 Pa.Super. 52, 469 A.2d 176 (1983); *Peair v. Home Ass'n of Enola Legion No. 751*, 287 Pa.Super. 400, 430 A.2d 665 (1981). "It is only in the rare case that a court should hold as a matter of law that the negligence of one party is equal to or greater than that of another." *White v. Southeastern Pennsylvania Transportation Authority, supra* 359 Pa. Super. at 137, 518 A.2d at 817. This is not such a case. A jury could have found that primary responsibility for allowing plaintiff to get out of bed was that of employees of the hospital. Thus, Dr. Swindell testified that, in his opinion, the primary responsibility for implementing the proper safeguards for post-operative care lay primarily with the nursing staff, with some overall supervision from the physician. From this, and other similar testimony, the jury could find reasonably that the hospital's causal negligence exceeded that of the surgeon who had performed the operation.

The hospital further contends that the trial court erred when it permitted Dr. Swindell to (1) read from the

Physician's Desk Reference, (2) render an opinion that the infection suffered by the plaintiff was one of several substantial factors in causing plaintiff's subsequent injuries, and (3) render an opinion that the failure to impose posey restraints, to prevent the plaintiff from getting out of bed, contributed to the plaintiff's injuries. These issues, however, were not raised in the hospital's post-trial motions and, therefore, have been waived. "[O]nly issues specifically raised in post-verdict motions can be considered and will be preserved for appeal, and issues raised only in briefs in support of those motions may not be considered." *Cherry v. Willer*, 317 Pa.Super. 58, 63, 463 A.2d 1082, 1084 (1983) (footnote omitted). See also: *Weir by Gasper v. Ciao*, 364 Pa.Super. 490, 528 A.2d 616 (1987), *allo. granted*, 518 Pa. 642, 542 A.2d 1371 (1988); *Commercial Credit Corp. v. Cacciatiore*, 343 Pa.Super. 430, 495 A.2d 540 (1985). Cf. *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979); *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

■ At trial, plaintiff testified that he could not recall getting out of bed at the hospital; and, therefore, he was unable to testify to the events of August 28, 1983. The fact that he had been out of bed on August 28, 1983, however, was documented by a note recorded by the night intern as follows:

Night intern

—Called to see pt. he—pt. was on *complete* bed rest, and he tried to get out of bed to go to bathroom.

—Pt. is anxious & states that he tried to get a nurse to empty his urinal, but couldn't get a hold of anybody.

—Pt. did not fall.—Was helped back to bed.

—His IV came off & part of his dressings on his hip came off.

—New IV is restarted. Will replace dressings.

This entry was received in evidence over objection and was read to the jury by Dr. Swindell. The hospital argues, as it did in the trial court, that this was error because it contains

a self-serving hearsay declaration by the plaintiff that he was unsuccessful in getting a nurse to empty his urinal.

Hearsay has been defined as an out of court statement offered to prove the truth of the matter asserted. See: *Spotts v. Reidell,* 345 Pa.Super. 37, 42, 497 A.2d 630, 633 (1985); *Kemp v. Qualls,* 326 Pa.Super. 319, 327, 473 A.2d 1369, 1373 (1984); *Commonwealth v. Cassidy,* 315 Pa.Super. 429, 433, 462 A.2d 270, 272 (1983). In the instant case, the out of court statement by plaintiff that he couldn't get a nurse to empty his urinal could serve no purpose other than to prove the truth of the matter asserted. The evidence, therefore, was clearly hearsay.

█ A business record, of course, is recognized as an exception to the hearsay exclusion. See: 42 Pa.C.S. § 6108; *In re Indyk's Estate,* 488 Pa. 567, 413 A.2d 371 (1979); *Fauceglia v. Harry,* 409 Pa. 155, 185 A.2d 598 (1962); Packel and Poulin, Pennsylvania Evidence, Ch. VIII, § 803.6 (1987). Where a business record contains multiple levels of hearsay, however, it is admissible only if each level falls within a recognized exception to the hearsay rule. See: *Felice v. Long Island Railroad Co.,* 426 F.2d 192, 197 (2nd Cir.1970), *cert. denied,* 400 U.S. 820, 91 S.Ct. 37, 27 L.Ed.2d 47 (1970). Cf. *Commonwealth v. Scott,* 503 Pa. 624, 630, 470 A.2d 91, 94 (1983) ("When dissecting a double hearsay statement, the reliability and trustworthiness of each declarant must be independently established."). Thus, although the night intern's note may have been admissible as a business record, the statement made to him by the plaintiff was not admissible unless it was admissible under a separate exception to the hearsay rule.

In determining whether the plaintiff's hearsay statement falls within any exception to the hearsay rule, we are guided by the Supreme Court's decision in *Cody v. S.K.F. Industries, Inc.,* 447 Pa. 558, 291 A.2d 772 (1972), where the Court set forth the general rule as follows:

> The law in Pennsylvania heretofore has been that statements to a doctor were admissible insofar as they were necessary and proper for diagnosis and treatment of the

injury and referred to symptoms, feelings and conditions. However, statements which related to the cause of the injury were not admissible, unless they were part of the res gestae. See generally, *Foulkrod v. Standard Accident Insurance Co.*, 343 Pa. 505, 23 A.2d 430 (1942); *Boyle v. Philadelphia Rapid Transit Co.*, 286 Pa. 536, 134 A. 446 (1926); *Riley v. Carnegie Steel Co.*, 276 Pa. 82, 119 A. 832 (1923); *Eby v. Travelers Insurance Co.*, 258 Pa. 525, 102 A. 209 (1917); *Gosser v. Ohio Valley Water Co.*, 244 Pa. 59, 90 A. 540 (1914); *Paull v. Meyers*, 200 Pa.Super. 74, 186 A.2d 849 (1962).

*Id.*, 447 Pa. at 556, 291 A.2d at 776. See also: Packel and Poulin, Pennsylvania Evidence, Ch. VIII, § 803.4 (1987). In the instant case, it cannot be said that the plaintiff's statement was necessary for diagnosis or treatment. Rather, the statement that he tried unsuccessfully to get a nurse to empty his urinal was a statement of fact which sought to explain why he had left his bed.

The statement was also inadmissible under the res gestae exception. This exception to the hearsay rule was explained by the Supreme Court as follows:

As we have recognized, "res gestae" is actually a generic term encompassing four discrete exceptions to the hearsay rule: (1) declarations as to present bodily conditions; (2) declarations of present mental states and emotions; (3) excited utterances; and (4) declarations of present sense impressions. See *Commonwealth v. Cooley*, 465 Pa. 35, 348 A.2d 103 (1975); McCormick, Evidence, § 286 (2nd Ed.1972).

*Commonwealth v. Pronkoskie*, 477 Pa. 132, 136–137, 383 A.2d 858, 860 (1978) (footnote omitted). See also: *Commonwealth v. Coleman*, 458 Pa. 112, 116, 326 A.2d 387, 389 (1974) (plurality opinion); *Commonwealth v. Blackwell*, 343 Pa.Super. 201, 209, 494 A.2d 426, 430 (1985). Plaintiff's statement that "he tried to get a nurse to empty his urinal, but couldn't get a hold of anybody" fails to qualify under any of these four res gestae exceptions. The statement was not a declaration of either the plaintiff's present bodily

condition or his present mental state, but a statement of fact. It did not convey relevant information regarding plaintiff's physical condition, feelings, symptoms, or present mental or emotional state. See generally: McCormick on Evidence, §§ 291–296 (3d ed. 1984); Packel and Poulin, Pennsylvania Evidence, Ch. VIII, § 803.3 (1987). It conveys only that plaintiff was unable to obtain the assistance of a nurse to empty his urinal.

Similarly, plaintiff's extrajudicial statement was not shown to be an excited utterance or a present sense impression. The statement was not shown to be "a spontaneous declaration by a person whose mind had been suddenly made subject to an over-powering emotion caused by some unexpected and shocking occurrence...." *Allen v. Mack,* 345 Pa. 407, 410, 28 A.2d 783, 784 (1942), quoted in Packel and Poulin, *supra,* § 803.2 at 562. See also: *Commonwealth v. Pronkoskie, supra,* 477 Pa. at 137–138, 383 A.2d at 860; *Commonwealth v. Blackwell, supra,* 343 Pa.Superior Ct. at 210–212, 494 A.2d at 430–431. Neither was it shown that the plaintiff-declarant was then observing an event which he was describing to another person who was also present at the scene. See: *Commonwealth v. Blackwell, supra,* 343 Pa.Superior Ct. at 212, 494 A.2d at 431–432. Plaintiff's statement did not relate to a contemporaneous observation of any event. It was, rather, a statement of a past event, i.e., that he had tried to get a nurse but couldn't get ahold of anyone.

 The trial court suggested in its opinion that, in any event, the evidence was harmless. We are unable to agree. The inference to be drawn from this evidence was that nurses had failed to empty plaintiff's urinal and had been unavailable or unwilling to aid him when he required assistance. There was no other evidence that the nurses had been unavailable or unwilling to respond to plaintiff's calls for assistance. Therefore, the hearsay statement injected a basis for finding negligence on the part of hospital employees not otherwise established by competent evidence. Because the incompetent hearsay evidence may have influ-

enced the jury's finding that the hospital was not only negligent but at least three times more negligent than the surgeon who had failed to prescribe restraints, a new trial is required.

We have also considered the hospital's argument that there was no evidence that plaintiff had suffered pain and that to allow recovery therefor was error. However, we find no merit in this contention. There was sufficient evidence to warrant an award for pain and suffering.

Because we must remand for a new trial, we do not now consider plaintiff's contention that he is entitled to recover delay damages pursuant to Pa.R.C.P. 238.

Reversed and remanded for a new trial. Jurisdiction is not retained.