**Evangelista v. Similaro**

*Carole F. Kafrissen,* for plaintiff.
*Paul E. Peel,* for defendants.

PAPALINI, *J.,* May 24, 2002—Defendants John P. Similaro D.O. and Inter Med Associates P.C. have filed an appeal of our order of December 18, 2001, denying their motion for post-trial relief.

## I. FACTUAL HISTORY

(1) A complaint was filed against the above captioned defendants alleging medical malpractice for failing to diagnose decedent Fernando Evangelista's lung cancer for a period of one and a half years.

(2) The case proceeded to trial before a jury with the undersigned presiding. On July 30, 2001, the jury returned with a verdict in favor of plaintiff and against defendants John P. Similaro D.O. and Inter Med Associates P.C., jointly and severally, in the amount of $100,000 (wrongful death) and $300,000 (survival action). The jury found in favor of defendant Michael A. Venditto D.O.

(3) Dr. Similaro was Mr. Evangelista's treating physician and Inter Med was Dr. Similaro's medical practice.

(4) Plaintiff filed a petition for delay damages and Dr. Similaro and Inter Med filed a motion for post-trial relief. Briefs were filed and oral argument was held.

(5) On December 18, 2001, we issued an order denying the motion for post-trial relief and awarding delay damages of $32,362.50 in the wrongful death action and $97,102.50 in the survival action.

(6) Defendants filed a timely appeal.

(7) Plaintiff was represented at trial and during post-verdict proceedings by Carole F. Kafrissen, Esquire. All defendants were represented at trial by Francis T. McDevitt, Esquire, and during post-verdict proceedings by Paul E. Peel, Esquire.

## II. ISSUES

In response to an order from this court, defendants filed a statement of matters complained of on appeal. We will only address the issues raised therein:

(1) The trial court erred in denying the defendants' motion for judgment n.o.v. due to plaintiff's failure to present sufficient medical expert testimony to meet her burden of proving that defendants caused the injuries to

Fernando Evangelista. (Citing N.T. 11-67, 7/18/01; N.T. 676-93, 7/25/01.)

(2) The trial court committed reversible error by refusing to allow the jury to consider whether Fernando Evangelista's failure to quit smoking constituted contributory negligence on his part. (Citing N.T. 25, 47, 51, 61, 7/18/01.)

## III. DISCUSSION

### A. *Sufficiency of Evidence*

In Pennsylvania, in order to establish a prima facie case of medical malpractice, the plaintiff must prove that: (1) the physician owed a duty to the patient; (2) the physician breached that duty; (3) the breach of that duty was the proximate cause of or a substantial factor in bringing about the patient's harm; and (4) the damages suffered by the patient were a direct result of that harm. *Mitzelfelt v. Kamrin*, 526 Pa. 54, 62, 584 A.2d 888, 891 (1990); *Joyce v. Boulevard Physical Therapy & Rehabilitation Center*, 694 A.2d 648, 653-54 n.3 (Pa. Super. 1997); *Eaddy v. Hamaty*, 694 A.2d 639, 642 (Pa. Super. 1997).

The defendants conceded that plaintiff may have established that Dr. Similaro's acts deviated from good and acceptable medical standards, but they contended that plaintiff failed to meet the burden of proving that the negligence caused any harm to Mr. Evangelista. Specifically, defendants asserted that the testimony of plaintiff's expert witness, Daniel H. Sterman M.D., was inadequate because, by using words such as "possibility" and "likelihood" he did not adequately express his opinion as to

whether Mr. Evangelista had lung cancer when Dr. Similaro treated him and whether the cancer could have been detected a year earlier. (Citing N.T. 11-67, 7/18/01; N.T. 676-93, 7/25/01.)

The evidence was that Mr. Evangelista, then 53, a heavy smoker and film projectionist, began coughing up blood in October 1993. He saw his family doctor, Dr. Baldino, who ordered x-rays and then a CAT scan. The CAT scan showed abnormalities in his lungs and chest. (N.T. 13-14, 7/18/01.) Dr. Baldino referred Mr. Evangelista to two partners of Inter Med, Dr. Similaro and Dr. Venditto.

Dr. Similaro became the primary treating physician, with Dr. Venditto at times consulting. He first saw Mr. Evangelista in December of 1993. After examining him and doing x-rays, a CAT scan and a pulmonary function test, he diagnosed the problem as pneumoconiosis or anthracosis, a non-cancerous condition caused by exposure to carbon rods in his work. He also concluded that Mr. Evangelista was suffering from chronic obstructive pulmonary disease (COPD) and congestive heart failure from a combination of smoking and carbon inhalation. He also noted one pulmonary nodule in his right lung. (N.T. 14, 7/18/01; N.T. 636-39, 7/25/01.)

Mr. Evangelista saw Dr. Similaro several times up until November 28, 1994, and was given chest x-rays and a CAT scan, but no biopsy was done. He was told to return in May of 1995. (N.T. 15-16, 7/18/01; N.T. 646, 7/25/01.)

In March of 1995, Mr. Evangelista began having severe back pain. Thereafter, he was diagnosed with stage

IV cancer. In addition to his lungs, the cancer was in multiple bones, including his spine and ribs. There were lesions in his adrenal glands. By then he was in great pain; he died in June of 1995. (N.T. 21-22, 7/18/01.)

Plaintiff's expert witness was Daniel H. Sterman M.D. who testified on July 18, 2001. He is a specialist in the field of pulmonary, oncologic and critical care medicine. (N.T. 4-9, 7/18/01.)

Dr. Sterman testified that Mr. Evangelista's cancer had not originated within his abdomen. (N.T. 24.) He stated that given Mr. Evangelista's risk factors and the fact that other sources of the cancer had been excluded, it was his opinion that the cancer had originated in his lungs, but that he could not state that with complete certainty because no lung biopsy was ever performed. (N.T. 26-27.)

Dr. Sterman further testified that Dr. Similaro breached the standard of care by failing to perform a bronchoscopy in 1994. He concluded that if one had been done, the cancer in the lung would have been detected at an earlier stage, which would have presented additional treatment options, prolonged Mr. Evangelista's life, and made complete recovery a possibility. He testified that due to the breach, Mr. Evangelista's cancer was not diagnosed until it was terminal, giving him no chance of survival and an extremely abbreviated life span. (N.T. 27-31.)

At the conclusion of his testimony, Dr. Sterman answered in the affirmative when he was asked if his opinions were all based on a reasonable degree of medical certainty in his field of specialization. (N.T. 33.)

An expert's use of "less definitive language in . . . parts of his testimony [does] not render his opinion inadmissibly speculative, as long as he state[s] his opinion with sufficient definiteness at some point." *Hreha v. Benscoter,* 381 Pa. Super. 556, 562, 554 A.2d 525, 528 (1989).

After a review of Dr. Sterman's testimony in its entirety, we concluded that it was sufficiently definitive to meet plaintiff's burden of proof as both breach of the standard of care and causation of harm.

## B. *Smoking*

Defendants also asserted that we committed reversible error by refusing to allow the jury to consider whether Fernando Evangelista's failure to quit smoking constituted contributory negligence on his part. (Citing N.T. 25, 47, 51, 61, 7/18/01.)

The plaintiff's theory in this case was that the defendants were negligent in not diagnosing Mr. Evangelista's cancer sooner. There is no allegation that they *caused* the cancer. The fact Mr. Evangelista continued to smoke between 1993 and 1995 did not impede the diagnosis of his cancer.

Therefore, as a matter of law, there was no contributory negligence on the part of Mr. Evangelista that was a substantial factor in causing his injury. Thus, the court did not err when we refused to permit the jury to consider the issue of Mr. Evangelista's contributory negligence.

However, Mr. Evangelista's smoking habit certainly was a relevant factor in assessing the harm to him caused

144

by the defendants' negligence. This issue was properly argued by defense counsel for the jury's consideration. (N.T. 771, 790, 7/26/01.)

For the reasons set forth above, defendants' motion for post-trial relief was denied.