J-S05013-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| IN THE MATTER OF THE ADOPTION OF A.J.T.P. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: K.P., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1277 WDA 2018 |

Appeal from the Order Entered July 25, 2018
In the Court of Common Pleas of Erie County
Orphans' Court at No(s):  Number 49 in Adoption 2018

BEFORE:   PANELLA, P.J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY PANELLA, P.J.:                    FILED APRIL 08, 2019

K.P. ("Mother") appeals from the decree that involuntarily terminated her parental rights to her son, A.J.T.P. ("Child") (born March 2011), pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S.A. § 2101–2938.[1]   After careful review, we affirm.

In October of 2016, the Erie County Office of Children and Youth ("OCY") received a report alleging Mother emotionally abused Child's sister, A.P.  See Pre-Dispositional Summary, 12/15/16, at 4; N.T., Termination Hearing,

_____

* Retired Senior Judge assigned to the Superior Court.

[1] The court also involuntarily terminated the parental rights of Child's father, R.B. ("Father").  Father did not appeal the decree involuntarily terminating his parental rights, nor did Father participate in this appeal.

7/19/18, at 61.  In December of 2016, OCY labelled the report as indicated.[2] N.T., Termination Hearing, 7/19/18, at 61.  As a result of the report, as well as concerns regarding Mother leaving Child with inappropriate caregivers, Mother's untreated mental health issues, and Mother's substance abuse, Child was adjudicated dependent January 5, 2017.  See id. at 62-63.  Child and A.P. were placed in kinship foster care with their maternal grandmother.  See Order of Adjudication and Disposition-Child Dependent, 1/5/17, at 2; Court Summary, 3/8/17, at 3.

The court ordered Mother to attend parenting classes, refrain from using drugs and alcohol, submit to random drug screens, participate in a psychological evaluation and follow all recommendations, and to continue with her current treatment for drug and alcohol and mental health issues.  See Order of Adjudication and Disposition-Child Dependent, 1/5/17, at 2.  At a permanency review hearing in March of 2017, the court determined that Mother made progress towards alleviating the circumstances that necessitated Child's placement.  See Permanency Review Order, 3/10/17, at 1. Accordingly, the court returned Child to Mother's physical custody.  See id. at 2.

Thereafter, Mother underwent several medical procedures in March and April of 2017.  In particular, Mother had teeth extracted, and was

_____

[2] A county agency concludes a report of child abuse is "indicated" if the "agency determines that substantial evidence of the alleged abuse by a perpetrator exists[.]"  23 Pa.C.S.A. § 6303(a).

subsequently hospitalized for several weeks for unrelated reasons. See N.T., Termination Hearing, 7/19/18, at 65-66, 101. OCY was concerned about Mother's pain management given Mother's history of drug abuse. See id. at 66.

Following Mother's hospitalization, Mother's contact with OCY decreased, and it was difficult to reach Mother by phone. See id. at 67. In May of 2017, Mother informed the OCY caseworker that she cancelled a dental appointment for Child because he no longer needed it. See id. at 67-68. The caseworker went to Mother's home and observed that Mother appeared to be under the influence of a substance, and was acting erratically. See id. at 68. The caseworker asked Mother to take a drug screen. See id. Shortly after leaving Mother's house, the caseworker received a text message from Mother that appeared to be sent to the caseworker inadvertently, suggesting that Mother needed someone to take the drug test for her. See id.

OCY made additional attempts to visit the home to ensure the safety of Child, with minimal success. See id. at 69. Further, Mother was not compliant with services. See id. On June 1, 2017, OCY obtained an emergency protective order based on Mother's lack of contact and compliance. See id. at 70. With the assistance of the City of Erie police, OCY located Mother and obtained custody of Child on June 8, 2017. See id. at 70-71.

Mother claimed that her lack of contact occurred because she was afraid she had a truancy warrant due to A.P.'s school attendance. See id. Following

Child's removal from Mother's care in June of 2017, Mother made little progress towards reunification. On April 24, 2018, the court changed Child's permanency goal to adoption. See Permanency Review Order, 4/24/18, at 1-2.[3]

OCY subsequently filed a petition to involuntarily terminate the parental rights of Mother and Father to Child. At the hearing on the petition, OCY presented the testimony of Officer David Madurski of the City of Erie Police Department; Peter von Korff, Ph.D., who conducted a psychological evaluation and a bonding assessment; Michelle Dushole, a caseworker clinician for OCY; and Christina Feely, the OCY caseworker. Mother, represented by counsel, testified on her own behalf.[4]

On July 25, 2018, the orphans' court entered the decree involuntarily terminating Mother's parental rights.[5] Mother timely filed a notice of appeal

_____

[3] There is no indication in the record that Mother appealed the goal change order.

[4] Father did not appear at the hearing.

[5] We briefly address, sua sponte, the representation of counsel for Child. See In re: K.J.H., 180 A.3d 411, 412-14 (Pa. Super. 2018). By order dated May 14, 2018, the court appointed Attorney Deanna Heasley to act as Child's guardian ad litem and legal counsel. See Order, 5/14/18, at 1. See In re T.S., 192 A.3d 1080 (Pa. 2018) (stating that a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for his or her legal interests, which our Supreme Court has defined as the child's preferred outcome). Attorney Heasley cross-examined witnesses, but did not call any witnesses on Child's behalf. At the conclusion of the hearing, Attorney Heasley noted that she met with Child on

and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother raises the following issues for our review:

1. The [c]ourt erred and committed an abuse of discretion by denying Mother's [w]ritten Motion for Continuance and therefore denying her adequate and effective assistance of counsel.

2. The [c]ourt erred and committed an abuse of discretion by denying Mother's [o]ral Motion for Continuance at the time of the hearing and therefore denying her adequate and effective assistance of counsel.

3. The [c]ourt erred and committed an abuse of discretion by admitting hearsay testimony of a police officer related to an alleged incident that occurred involving Mother.

4. The [c]ourt erred and committed an abuse of discretion by admitting a hearsay document in the form of a police report regarding an alleged incident that occurred involving Mother.

5. The [c]ourt erred and committed an abuse of discretion by admitting hearsay testimony regarding the withdrawal of charges filed against Mother.

6. The [c]ourt erred and committed an abuse of discretion when it found that Erie County Office of Children Youth and Families had met its burden to terminate Mother's parental rights through clear and convincing evidence under 23 Pa.C.S.[A.] § 2511[(a)] (1), (2), (5), [and] (8).

7. The [c]ourt erred and committed an abuse of discretion when it found that Erie County Office of Children Youth and Families had met its burden under 23 Pa.C.S.[A.] § 2511[(b)] that such

_____

several occasions, and that it was very difficult to focus Child or to talk to him in a substantive way. See N.T., Termination Hearing, 7/19/2018, at 134. Attorney Heasley stated her belief that Child's legal and best interests merged, "based upon contacts and conversations I've had with him, with his therapist, with the caseworker and caseworker supervisor, and with Dr. von Korff. . .", and subsequently argued in favor of the termination of Mother's parental rights. See id. at 4-5, 132-35.

> a termination would [] benefit the physical and emotional needs and welfare of the [c]hild.

Mother's brief at 4-6.

In Mother's first two issues, she argues that the orphans' court erred in denying her counsel's written and oral requests for a continuance of the termination hearing. Mother asserts that she retained private counsel 72 hours prior to the termination hearing. See Mother's brief at 12. Mother claims that counsel promptly filed a motion for continuance, which the court denied. See id. at 12, 15.

Mother argues that she was denied her constitutional right to effective representation because her counsel had insufficient time to prepare. See id. at 12-15. Mother assails the conduct of her prior counsel, claiming, "[a] common thread throughout Mother's testimony was that she had not been informed about various options or mechanisms to have her concerns with the process addressed." Id. at 14. Mother concludes, "the trial court erred due to its failure to continue the hearing following her retention of effective counsel in order to allow counsel to prepare the most effective and fundamentally fair opportunity to defend her fundamental liberty interest." Id. at 15. Further, Mother contends that the court erred in denying her oral request for a continuance on the day of the hearing because her counsel had insufficient time to prepare, and had not received Mother's file from her former counsel. See id. at 15-16.

> Appellate review of a trial court's continuance decision is deferential. "The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. As we have consistently stated, an abuse of discretion is not merely an error of judgment. Rather, discretion is abused when 'the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record. . . .'"

Commonwealth v. Brooks, 104 A.3d 466, 469 (Pa. 2014) (citations omitted).

The orphans' court explained its rationale for denying Mother's request for a continuance as follows:

> The [c]ourt[,] reviewing the history of this case, as well as the law, determined that a continuance was not justified. Throughout the history of the dependency involvement, [Mother] had an initial court-appointed attorney until she retained private counsel on December 22, 2017. Private counsel was fired by [Mother] on June 5, 2018, at which time counsel filed a Motion to Withdraw. From June 5, 2018 until July 17, 2018, [Mother] was allegedly seeking new counsel. [Mother] was well aware of the necessity of counsel, and the importance of retaining counsel prior to any court hearing. There was at least a 6-week period after she fired prior counsel for her to retain a new attorney. Finding new counsel 2 days before a hearing that had been scheduled for well over 2 months implies a lack of diligence on [Mother]'s part, a trait she had exhibited throughout her involvement with the dependency system. [Mother's counsel] was able to cross-exam[ine] and present evidence in the Termination Hearing. No prejudice befell [Mother]'s case, despite her last minute retention of counsel. The denial of the continuance request was proper.

Orphans' Court Opinion, 10/12/18, at 13.

Upon a review of the record, we discern no abuse of discretion by the orphans' court. By order of court dated May 14, 2018, the court scheduled a hearing on OCY's petition to involuntarily terminate Mother's parental rights.

- 7 -

See Order, 5/14/18, at 1. The order confirmed that Attorney John M. Bonanti represented Mother. See id. On June 4, 2018, Attorney Bonanti filed a motion to withdraw as counsel, averring that Mother contacted him and dismissed him as her counsel. See Motion to Withdraw as Counsel of Record, 6/4/18, at ¶ 3. The court granted the motion on June 5, 2018. See Order, 6/5/18.

Over a month later, on July 18, 2018, Mother filed an emergency motion for continuance, averring that Mother retained counsel on July 17, 2018, and that counsel needed additional time to prepare. See Emergency Motion for Continuance, 7/18/18, at 1-3. The court denied the motion. See Order, 7/18/18.

At the start of the termination hearing, Mother's counsel requested a continuance, asserting: "[Mother] only met with me a few days before hiring me; and ... I haven't had time to fully review the file and adequately prepare to zealously represent her here today." N.T., Termination Hearing, 7/19/18, at 4. The court denied the oral motion for continuance. See id.

Although Mother's argument suggests that her right to counsel was violated because her counsel had inadequate time to prepare, counsel's level of preparation was directly related to Mother firing her former counsel, and then waiting for more than six weeks to hire replacement counsel. This delay was caused by Mother's inaction, and the court did not abuse its discretion in

denying Mother's written and oral requests for a continuance. Accordingly, Mother's first and second issues do not merit relief.

In Mother's third, fourth, and fifth issues, she raises evidentiary challenges to the testimony of Officer David Madurski. To supply context for Mother's arguments, we summarize Officer Madurski's testimony.

Officer Madurski was called as a witness to testify regarding an incident of domestic violence that allegedly occurred between Mother and her boyfriend, M.P., on February 19, 2018. See N.T., Termination Hearing, 7/19/18, at 7-8. Officer Madurski, as well as other officers, responded to the scene. See id. Officer Madurski testified to the police report of the incident, and noted that M.P. stated that Mother hit him in the hand with a wine glass earlier in the day, causing a laceration that required 30 stitches. See id. at 8-9.

Officer Madurski testified that M.P. stated that when he returned to the residence from the hospital, Mother demanded $400.00 from him. Mother eventually picked up a knife, cut the couch, and broke windows in the residence. See id. at 9. The officer took Mother into custody. See id. at 10. Officer Madurski stated that M.P. subsequently indicated he did not want the charges pursued as Mother was involved with OCY. See id. at 11.

Mother argues that the court improperly permitted Officer Madurski to testify to statements made by M.P. and his friend. She further contends the court improperly admitted the police report with the hearsay statements. See

Mother's brief at 17-19. In addition, Mother objects to the court admitting the police report because Officer Madurski failed to establish the report is a business record subject to 42 Pa.C.S.A. § 6108(b) of the Uniform Business Records as Evidence Act ("UBREA").[6] See id. at 18-19. Mother also contends that the court improperly permitted Officer Madurski to testify to M.P.'s out of court statements on why he did not want to pursue charges. See id. at 19-20. In response, OCY argues that the police report is admissible pursuant to the UBREA, that M.P.'s statements are admissible pursuant to Pa.R.E. 803(3),[7]

_____

[6] Section 6108(b) of UBREA provides:

> A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42 Pa.C.S.A. § 6108(b).

[7] Rule 803(3) states:

> (3) Then-Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Pa.R.E. 803(3).

and that, in any event, the admission of this evidence is harmless error. See OCY's brief at 37-38.

Before addressing Mother's arguments, we consider whether Mother preserved these issues. As Officer Madurski was testifying regarding the incident, Mother's counsel objected as follows:

> [Mother's counsel]: Objection, Your Honor. I mean even though this is in the normal course of business, these are statements made by [M.P.] and that would be hearsay as he's not present to, you know, confirm that these events actually occurred.

N.T., Termination Hearing, 7/19/18, at 8.

The court acknowledged this objection also pertained to the police report. See id. at 12. Mother's hearsay objection was directed to the statements of M.P. regarding how M.P. lacerated his hand. Mother did not assert there was an insufficient basis to admit the police report under the UBREA, nor did Mother object to Officer Madurski testifying as to why M.P. did not want to pursue charges. Accordingly, we conclude that Mother has waived these issues. See In re S.C.B., 990 A.2d 762, 767 (Pa. Super. 2010) (explaining that to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of proceedings before the trial court; the failure to timely object to a basic and fundamental error will result in waiver of the issue on appeal).

We now turn to Mother's objection to M.P.'s statements about how his hand was injured. In general, the admission or exclusion of evidence is within the sound discretion of the trial court and will not be disturbed absent an

abuse of discretion or an error of law. B.K. v. J.K., 823 A.2d 987, 991–992 (Pa. Super. 2004). Hearsay is an out-of-court statement offered for the truth of the matter asserted. Pa.R.E. 801. Unless the statement is not being offered for its truth, or it falls within a hearsay exception, it is inadmissible. Pa.R.E. 802. "A business record, of course, is recognized as an exception to the hearsay exclusion. Where a business record contains multiple levels of hearsay, however, it is admissible only if each level falls within a recognized exception to the hearsay rule." Hreha v. Benscoter, 554 A.2d 525, 529 (Pa. Super. 1989) (citations omitted).

Instantly, the police report was admitted, over counsel's objection, in its entirety, including the statements of M.P. contained within it. Officer Madurski also testified to M.P.'s statements about the incident. The court overruled Mother's hearsay objection.

M.P.'s out-of-court statements concerning how he had cut his hand, and Mother's behavior, were offered for the truth of the matter asserted, and constituted hearsay. Although the police report was properly admitted as a business record, the hearsay statements of M.P. contained within the report were inadmissible "double hearsay," absent an exception.

OCY argues that they reflect M.P.'s state of mind pursuant to Pa.R.E. 803(3).

> Pursuant to the state of mind hearsay exception, where a declarant's out-of-court statements demonstrate the declarant's state of mind, are made in a natural manner, and are material and relevant, they are admissible pursuant to the exception. Out-of-

> court declarations that fall within the state of mind hearsay exception are still subject to general evidentiary rules governing competency and relevancy. Accordingly, whatever purpose the statement is offered for, be it to show the declarant's intention, familiarity, or sanity, that purpose must be a "factor in issue," that is, relevant. Evidence is relevant if it logically tends to establish a material fact in the case, if it tends to make a fact at issue more or less probable, or if it supports a reasonable inference or presumption regarding the existence of a material fact.

Commonwealth v. Levanduski, 907 A.2d 3, 15–16 (Pa. Super. 2006) (en banc) (brackets and emphasis omitted). However, M.P.'s state of mind is not a factor in this case, and, further, the statements were not introduced to establish that he was injured. Rather, they were introduced to establish the factual circumstances surrounding the incident where he cut his hand. Accordingly, Pa.R.E. 803(3) is not applicable, and the court erred in overruling Mother's hearsay objection.

> Nevertheless, an error will be deemed harmless if:
>
> (1) the error did not prejudice the defendant or the prejudice was de minimus; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence … was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

Commonwealth v. Markman, 916 A.2d 586, 603 (Pa. 2007) (citation omitted); see also Schuenemann v. Dreemz, LLC, 34 A.3d 94, 99 (Pa. Super. 2011) ("[Evidentiary] rulings must be shown to have been not only erroneous but also harmful to the complaining part[y]"). Further, a trial court, acting as the finder of fact, is presumed to know the law, ignore prejudicial

statements, and disregard inadmissible evidence. See Commonwealth v. Smith, 97 A.3d 782, 788 (Pa. Super. 2014).

Here, the court's opinion states: "this [c]ourt did not consider that report or testimony in its determination to terminate [Mother]'s parental rights." Orphans' Court Opinion, 10/12/18, at 15. Additionally, and as discussed more fully in this opinion, the evidence overwhelmingly established that termination of Mother's parental rights was appropriate. Based on the totality of the evidence, combined with the court's express statement that it did not consider the evidence at issue, we conclude that the error is harmless, and that Mother is not entitled to relief.

Turning to Mother's arguments that the court improperly terminated her parental rights to Child, we review these claims mindful of our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

In re T.S.M., 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. § 2101-2938, which requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

In re L.M., 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

The court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8), as well as (b). This Court may affirm the orphans' court's decision regarding the termination of parental rights pursuant to any one subsection of Section 2511(a), as well as Section 2511(b). See In re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). As we determine the court properly terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), we need not address its conclusions pursuant to § 2511(a)(1), (5), or (8).

We first consider whether the orphans' court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the

causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

In re Adoption of M.E.P., 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." In re A.L.D., 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Mother argues that the evidence showed that she generally cared for Child appropriately. See Mother's brief at 22. Mother recounts that she completed parenting classes and was receiving dual-diagnosis treatment. See id. at 23. Mother argues she was attempting to overcome her issues, and suggests that there is limited evidence that she abused alcohol or other drugs. See id. at 23-24. Mother contends that Dr. von Korff's psychological evaluation is faulty because he did not review or speak to Mother's care providers. See id. at 24. Mother claims that she complied with many goals and is willing to do what she needs to so that Child can be returned to her care. See id. at 24-25. Mother also contends that with adequate counsel, Mother would have been able to resolve her issues. See id. at 25.

In addressing Section 2511(a), the orphans' court concluded:

Issues 6 and 7 raised by the mother on appeal claim the [c]ourt erred and abused its discretion in finding sufficient, competent, clear and convincing evidence to terminate her parental rights under 23 Pa.C.S.A. §§2511 (a)(1), (2), (5), and (8). [Child] had been in placement approximately 16 months. [Mother] had refused and failed to avail herself of services provided to help her

regain custody of her son. Her continued refusal to accept responsibility for her actions, or lack of action, brought this [c]ourt to the conclusion that [OCY] had presented competent, clear and convincing evidence justifying the termination of [Mother]'s parental rights.

Orphans' Court Opinion, 10/12/18, at 12.

Our review of the record supports the orphans' court's finding of sufficient grounds for termination under Section 2511(a)(2). Michelle Dushole, a caseworker clinician for OCY, testified to Mother's drug screens. See N.T., Termination Hearing, 7/19/18, at 53. Mother was required to provide random drug and alcohol screens, and was informed that a no-show is presumed positive. See id. at 53-54. From December of 2016 through April of 2018, Mother failed to appear for drug screens 62 times. See id. at 55.

Mother claimed that her no-shows were the result of her being out of town, and also claimed that she did not know when she was supposed to be taking the tests. See id. at 104, 123. From September of 2017 through April of 2018, Mother also tested positive 14 times. See id. at 55. The positive tests were generally for alcohol, Suboxone, or both. See id. at 55-56. Mother also tested positive for cocaine in September of 2017. See id. Ms. Dushole did not know if Mother had a prescription for Suboxone, although Mother claimed that she did. See id. at 56, 114.

OCY caseworker Christina Feely began working with the family in January of 2017. See id. at 60. Ms. Feely noted that Child is currently placed

with his paternal grandparents ("Foster Parents"), and has resided with them for more than a year. See id. at 30, 43, 71.

After Child was placed with Foster Parents in June of 2017, Mother was marginally cooperative. See id. at 72. Mother refused to comply with services, and refused to sign releases. See id. at 72-73. For instance, Mother claimed to see a therapist at Stairways, but would only sign an authorization for treatment and medication records, but not treatment notes, "because of how things [she] felt were being slanted. . . ." Id. at 98.

After visits with Mother, Child wet his bed, was afraid of the dark, would cry, and say that he had to protect Mother. See id. at 78. At the recommendation of Child's therapist, visitation with Mother ceased in June of 2017. See id. at 77. Thereafter, Mother was permitted phone contact with Child. See id. During the phone calls, Mother told Child that OCY was trying to steal him so Foster Parents could have him. See id. Further, Mother would become very emotional and cry during the phone calls, and Child would become very upset. See id. at 86. By April of 2018, the phone calls ceased. See id. at 79-80.

Feely noted that Mother did not see Child for over a year, and showed no level of motivation. See id. at 84. Feely recounted a meeting that she scheduled with Mother and service providers in February of 2018, explaining that Mother called five minutes before the meeting to tell Feely that she would be late, and then failed to come to the meeting. See id. at 80-81. Feely testified that Mother did not alleviate the conditions that led to Child's

placement. See id. at 81. Further, Mother did not demonstrate an ability to safely parent Child. See id.

Dr. von Korff testified regarding a bonding assessment he conducted with Child and Foster Parents, as well as his psychological evaluation of Mother. See id. at 14. Dr. von Korff met with Mother seven times between January of 2017 and August of 2017 to perform the evaluation. See id. at 15.

Mother failed to appear for scheduled sessions, and there were periods of time when she was not in contact with his office. See id. Mother self-reported a diagnosis of bipolar disorder and an extensive history of treatment. See id. at 39. Mother also acknowledged a prior history of drug abuse. See id. at 98-99. Mother reported that she disappeared for long periods of time into her room, became involved in substance abuse, and lashed out at her children. See id. at 28-29.

Dr. von Korff observed that Mother had a combativeness and oppositional quality that she brought to the meetings. See id. at 16. He opined that Mother has "grave difficulty seeing beyond her own emotional needs and her own perspective when talking about her relationships with the children. . . ." Id. at 17. He also believed that Mother had great difficulty regulating angry feelings, managing heightened emotional states, and an inclination towards impulsive acts. See id. at 20.

Dr. von Korff opined that Mother must get beyond herself to be able to recognize what being parented by her was like, and to empathize with her

children. See id. at 29. He believed this would be a challenging task because Mother projects blame and showed marginal participation in treatment. See id.

The court ordered Mother to participate in a bonding assessment, but Mother refused because she did not agree with Dr. von Korff's initial psychological evaluation. See id. at 42, 75. Dr. von Korff was able to meet with Child. Dr. von Korff noted that Child was very active and had difficulty sitting down. See id. at 35. He had Child participate in activities and had Child complete stories. See id. at 30-31. Child's responses led Dr. von Korff to conclude that Child grew up in circumstances where he was an independent actor who could not rely on Mother as a go-to person. See id. at 34.

Mother also testified, explaining that her lack of visitation occurred because OCY requested a letter from a therapist before visitation could resume. See id. at 106. Asked by her counsel whether she did everything to comply with the court's recommendations, Mother responded: "Maybe not everything." See id. at 118. Instead, she described herself as, "working at it," and stated that she did not believe she had enough time, observing, "you don't fix Rome in a day." See id. Mother did not believe reunification efforts should cease, "especially with there being no visitation for a year, no opportunity to really work on the issues that we are having." See id. at 119. Mother asserted she would comply with recommendations in the future. See id.

As this Court has stated, "A child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." In re Adoption of R.J.S., 901 A.2d 502, 513 (Pa. Super. 2006). The record substantiates the conclusion that Mother's repeated and continued incapacity, abuse, neglect, or refusal has caused Child to be without essential parental control or subsistence necessary for his physical and mental well-being. Moreover, the record supports the inference that Mother cannot or will not remedy this situation. As noted above, in order to affirm a termination of parental rights, we need only agree with the orphans' court as to any one subsection of Section 2511(a) before assessing the determination under Section 2511(b), and we, therefore, need not address any further subsections of Section 2511(a).

This Court has stated that the focus in terminating parental rights under Section 2511(a) is on the parent, but it is on the child pursuant to Section 2511(b). See In re Adoption of C.L.G., 956 A.2d 999, 1008 (Pa. Super. 2008) (en banc).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child

is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

In re Adoption of C.D.R., 111 A.3d 1212, 1219 (Pa. Super. 2015).

Mother argues the orphans' court erred in its analysis of Section 2511(b) because OCY presented insufficient testimony to establish that termination would best serve Child's needs and welfare. See Mother's brief at 26. Mother believes that she appropriately cared for Child's medical needs, and that there was no testimony that a continuing relationship with Mother would adversely impact Child. See id. Mother points to her testimony that Child tells her he misses her. See id. Mother contends that termination does not benefit Child's physical and emotional interests. See id. at 27.

The orphans' court explained its analysis of Section 2511(b) as follows:

Additionally, [Mother]'s issues 8 and 9 allege the [c]ourt erred and abused its discretion in finding sufficient, competent evidence that adoption was in [Child]'s best interests pursuant to 23 Pa.C.S.A. 2511(b). [C]hild's improvement in his grandparent's home, the prognosis for his future by Dr. von Korff, and Ms. Feely's opinion that breaking the parental bond between [Child] and [M]other would not be detrimental to the boy, are sufficient, clear and convincing factors leading to the conclusion adoption is in [Child]'s best interests.

Orphans' Court Opinion, 10/12/18, at 12.

Upon review, we again discern no abuse of discretion. The record supports the orphans' court's finding that Child's developmental, physical and emotional needs and welfare favor termination of Mother's parental rights pursuant to Section 2511(b).

Feely noted that Child does not ask about Mother, request to see her, or ask to go live with her. See N.T., Termination Hearing, 7/19/18, at 84. Feely believed Child cares about Mother, but does not want to return. See id. at 91. Ms. Feely observed Child is very happy where he is, and that Child is in a good place. See id. at 84. She noted Child is doing remarkably well, and, although he started school late, his grades are excellent. See id. at 73. She described Child as on task, and on schedule. See id. at 82.

Feely observed Foster Parents are meeting Child's needs. See id. at 83-84. Moreover, Mother had not had visits with Child in more than a year. See id. at 84. Feely opined that there would be no detrimental impact on Child if Mother's rights were terminated, and that it would be in Child's best interest for Mother's parental rights to be terminated. See id. at 84-85.

Dr. von Korff described the relationship between Child and Foster Parents as healthy, and in the early stage of moving toward security. See id. at 36. They showed affection for one another, and Dr. von Korff observed Foster Parents did a good job of setting limits for Child. See id. at 35-36. Dr. von Korff believed it would be in Child's best interest to remain in his current placement to further his healthy attachment to Foster Parents. See id. at 36.

Dr. von Korff opined that contact with Mother should only occur in a clinical setting. See id. at 37.

Mother testified that she was extremely close with Child when he was removed in June of 2017. See id. at 99. She also asserted that she saw Child several times in the prior year, and Child asks when he can see her at every phone call. See id. at 106-109, 125-26. Mother testified that she loves Child dearly. See id. at 99.

The record confirms that it would best serve the needs and welfare of Child to involuntarily terminate Mother's parental rights pursuant to Section 2511(b). Mother failed to visit Child for over a year, and her contact with Child caused Child distress. Child is thriving in his foster home, and is in the process of developing an attachment with Foster Parents. Remaining with Foster Parents will allow Child to achieve permanence and stability. See T.S.M., 71 A.3d at 269 (stressing the need to expedite the placement of dependent children "in permanent, safe, stable, and loving homes.").

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion by involuntarily terminating Mother's parental rights to Child. Therefore, we affirm the court's July 25, 2018 decree.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  4/8/2019